363 A.2d 1152
Kenneth W. BEHREND et al.

v.

The BELL TELEPHONE COMPANY of Pennsylvania, a corporation, Appellant, and the Reuben H. Donnelley Corporation, a corporation.
Kenneth W. BEHREND

v.

The BELL TELEPHONE COMPANY of Pennsylvania, a corporation, Appellant.

Superior Court of Pennsylvania.
Sept. 27, 1976.

48

50

52

Richard B. Tucker, Jr., Donald P. Eriksen, Tucker, Arensberg & Ferguson, Pittsburgh, Jerome J. Shestack, Schnader, Harrison; Segal & Lewis, Philadelphia, for appellant.

James E. Beasley, Jeffrey M. Stopford, Philadelphia, for appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

JACOBS, Judge:

We are here concerned with an individual's recovery of compensatory and punitive damages against the Bell Telephone Company of Pennsylvania, hereinafter referred to as Bell, for the omission of his name from both the telephone directories distributed by Bell and the directory assistance operators' lists, and for the disruption of his telephone service. We will reverse and remand for a new trial.

Kenneth W. Behrend, the appellee, was an attorney practicing in Allegheny County in partnership with another attorney, Mark B. Aronson, at all times relevant to this appeal. In 1966 he began to experience difficulty with his business telephone which he testified continued until the time of trial. Initially, appellee discovered that whenever all the lines into his office were in use, an incoming caller, instead of hearing a busy signal, would be informed by a voice that the number had been disconnected. This situation was corrected after a few months and a settlement between appellee and Bell was reached and a release from liability executed by appellee. However, a host of telephone related problems continued to plague appellee. These consisted of such things as false busy signals, noise or static on the telephone so loud as to interfere with conversation, the discovery of other parties or offices on the firm's lines, a recurrence of the false information that the line was disconnected or out of service given to incoming callers, no dial tone accompanied by inability to use the telephone to call out, failure of the phone to ring in the office although the caller

would hear a ring, and having the entire switchboard light up and flash on and off thus preventing incoming calls from being completed. These problems occurred irregularly but frequently. Complaints were repeatedly made to Bell, to which Bell responded by sending employees to repair appellee's phone service, but the problems persisted.

In addition to the disruptions in service, appellee's name, as an individual business listing designating his status as an attorney, was omitted from both the white and yellow pages [1] of Bell's directories in 1968. This omission occurred shortly after appellee and Mark Aronson established a partnership, apparently as a result of an attempt by appellee's office manager, Mrs. Behrend, to have an additional listing for the law firm, Behrend and Aronson, included in the directories. Although the firm name, Behrend & Aronson, was accurately listed, as was Mr. Aronson's individual business listing, the separate listing for Kenneth W. Behrend, attorney, was omitted both in the white pages and under the classified section for attorneys in the yellow pages. Furthermore, appellee's individual name with the designation "attorney" was omitted from the lists used by the directory assistance operators in April 1967. The omission from the directory assistance operators' lists was discovered at the end of 1967 and corrected immediately. However, when the printed directories were distributed in December of 1967 and the omission of appellee's individual business listing was discovered and brought to Bell's attention, Bell asserted that the omission could not be corrected until the new directories were distributed the next year. Bell refused to republish all the Pittsburgh directories or to mail gummed errata strips to all Pittsburgh

---

1. The alphabetical portion of the telephone directory will be referred to as the white pages throughout, and the classified directory will be referred to as the yellow pages.

subscribers to be pasted in the telephone book.[2]  Appellee's individual business listing did appear correctly in the next directory published and his other listings, that of his firm and his residence, were correctly listed throughout.

Appellee initiated this action with two complaints, one in trespass and one in assumpsit, which were later consolidated for trial.  Both negligence and breach of contract are alleged in connection with (1) Bell's failure to print appellee's individual business listing, (a) in the white pages, or (b) under the classified heading "attorneys" in the yellow pages in the 1968 directories; (2) omission of appellee's name from the directory assistance operators' lists from April 1967 until the end of that year; and (3) failure to provide adequate telephone service from 1966 to the present time.  Appellee further alleges that Bell's various failures and omissions were intentional and malicious and constitute intentional interference with appellee's business.  As a result of the faulty service provided by Bell, as well as its failure to correct its service upon notice, loss of profits and business opportunities are asserted, and both compensatory and punitive damages demanded.

The liability and damages issues were presented separately to a jury.  At the conclusion of the liability section, the jury returned special findings by answering 15 interrogatories indicating that Bell was liable to appellee on every count.  After hearing the damage portion of the trial, the jury returned a verdict of $100,000 compensatory damages and $50,000 punitive damages.  This appeal followed.

---

2.  These were two suggestions offered by appellee which were rejected by Bell as methods to correct the situation.  Bell did offer to mail notices to appellee's clients, but as appellee had already taken this precaution on his own behalf, this offer was rejected.

I

■■  Appellant Bell first maintains that the Public Utility Commission (hereinafter PUC) has exclusive jurisdiction over the matters raised in this appeal.[3]  The basis for this assertion lies in appellant's conceptualization of the essential issue in the case as being a question of the reasonableness and adequacy of the telephone service provided by Bell.  To substantiate its contention, appellant points to a number of sections in the Public Utility Law which set forth the obligation of utility companies to provide service and the corresponding power of the PUC to ensure that the service is performed according to the standard envisioned in the act.[4]  The act

3.  Appellee has argued that this issue was waived due to Bell's failure to raise it in a timely manner.  In light of our disposition of this question in appellee's favor, we will not review the waiver issue.

4.  Section 401 of the Public Utility Law provides: "Every public utility shall furnish and maintain adequate, efficient, safe, and reasonable service and facilities, and shall make all such repairs, changes, alterations, substitutions, extensions, and improvements in or to such service and facilities as shall be necessary or proper for the accommodation, convenience, and safety of its patrons, employes, and the public.  Such service also shall be reasonably continuous and without unreasonable interruptions or delay.  Such service and facilities shall be in conformity with the regulations and orders of the commission."  Act of May 28, 1937, P.L. 1053, § 401, 66 P.S. § 1171.

"Service" is defined broadly:  " 'Service' is used in this act in its broadest and most inclusive sense, and includes any and all acts done, rendered, or performed, and any and all things furnished or supplied, and any and all facilities used, furnished, or supplied by public utilities  .  .  .  in the performance of their duties under this act to their patrons, employes, other public utilities, and the public  .  .  .."  Act of May 28, 1937, P.L. 1053, § 2(20), *as amended,* 66 P.S. § 1102(20).

The PUC is empowered to act to correct abuses in the provision of service as they arise.  "Whenever the commission, after reasonable notice and hearing, upon its own motion or upon complaint, finds that the service or facilities of any public utility are unreasonable, unsafe, inadequate, insufficient, or unreasonably discriminatory, or otherwise in violation of this act, the commission shall determine and prescribe, by regulation or order, the reasonable, safe, adequate, sufficient, service or facilities to be observed, furnished, enforced, or employed, including all such repairs,

enables the PUC to promulgate regulations structuring the operation of the public utility companies to best conform to the public interest.[5]  Under the authority of the act, the PUC can establish controls over public utilities in those matters affecting public service.  Where appropriate injunctions can be obtained,[6] or fines can be imposed,[7] which can be enforced in the Commonwealth Court.[8]  *PUC v. W. J. Dillner Transfer Co.*, 191 Pa.Super. 136, 155 A.2d 429, *allocatur refused*, 191 Pa.Super. *xxv* (1959); *York Telephone & Telegraph Co. v. PUC*, 181 Pa.Super. 11, 121 A.2d 605 (1956).  None of these sections, however, provide for recovery of damages where injury or loss is incurred as a result of the acts or omissions of a public utility.  Because the case before us alleges a loss attributable to a public utility and seeks recovery, it does not come within the provisions of these sections.

■■  The extent of the PUC's jurisdiction has been clearly outlined by the courts of this Commonwealth in the course of a long series of opinions.  In *Lansdale Borough v. Philadelphia Electric Co.*, 403 Pa. 647, 650–51,

changes, alterations, extensions, substitutions, or improvements in facilities as shall be reasonably necessary and proper for the safety, accommodation, and convenience of the public, and shall fix the same by its order or regulation."  Act of May 28, 1937, P.L. 1053, § 413, 66 P.S. § 1183.

5.  The regulation of telephone directories is specifically provided for as follows:
   "Directories shall be revised and reissued at sufficiently frequent intervals to avoid serious inconvenience to the public. A satisfactory length for a directory period shall be determined by the volume of changes and new listings and the facilities available for supplying new numbers to calling parties and for intercepting calls to numbers which have been changed."  52 Pa.Code § 63.21.

6.  Act of May 28, 1937, P.L. 1053, § 903, *as amended*, 66 P.S. § 1343 (Supp.1976–77).

7.  Act of May 28, 1937, P.L. 1053, § 1301, *as amended*, 66 P.S. § 1491.

8.  Act of July 31, 1970, P.L. 673, § 508(a)(55), 17 P.S. § 211.508(a) (55) (Supp.1976–77).

170 A.2d 565, 567 (1961) the Supreme Court, after an extensive review of prior cases concerning PUC jurisdiction, concluded: "Initial jurisdiction in matters concerning the relationship between public utilities and the public is in the PUC—not in the courts. It has been so held involving rates, service, rules of service, extension and expansion, hazard to public safety due to use of utility facilities, installation of utility facilities, location of utility facilities, obtaining, alerting, dissolving, abandoning, selling or transferring any right, power, privilege, service, franchise or property and rights to serve particular territory." (Footnotes omitted). The exclusive regulatory jurisdiction conferred on the PUC in these areas permits evaluation and control of utility activities as they affect public service. *Behrend v. Bell Telephone Co.*, 431 Pa. 63, 243 A.2d 346 (1968); *Chester County v. Philadelphia Electric Co.*, 420 Pa. 422, 218 A.2d 331 (1966); *Colonial Products Co. v. PUC*, 188 Pa. Super. 163, 146 A.2d 657 (1958); *Lansdale Borough v. Philadelphia Electric Co.*, supra. No other entity can interfere with the commission's performance of its function by making additional or different requirements of a utility, *Blythe Township Municipal Authority v. PUC*, 199 Pa.Super. 334, 185 A.2d 628 (1962), or by conducting an independent appraisal of a utility's service to the public. *Einhorn v. Philadelphia Electric Co.*, 410 Pa. 630, 190 A.2d 569 (1963).

■■ The question of utility policy as it affects the public is not now before this court, nor is the determination of the reasonableness or adequacy of Bell's methods of providing service. This is an action for damages and the fact that the regulation of utility service is exclusively in the PUC's jurisdiction does not remove from the court's jurisdiction an action for damages based on a failure of service, any more than the PUC's power to promulgate safety regulations prohibits the courts from hearing a claim for personal injuries resulting from un-

safe utility equipment. *See, e. g., Smith v. Bell Telephone Co.*, 397 Pa. 134, 153 A.2d 477 (1959); *Frangis v. Duquesne Light Co.*, 232 Pa.Super. 420, 335 A.2d 796, *allocatur refused*, 232 Pa.Super. *xxxi* (1975). The commission's jurisdiction is limited to regulatory matters essential to utility service. *Felix v. PUC*, 187 Pa.Super. 578, 146 A.2d 347, *allocatur refused*, 187 Pa.Super. *xxviii* (1958); *Meyerson v. New York Telephone Co.*, 65 Misc. 2d 693, 318 N.Y.S.2d 900 (1971). The courts retain jurisdiction of a suit for damages based on negligence or breach of contract wherein a utility's performance of its legally imposed and contractually adopted obligations are examined and applied to a given set of facts.[9] *See Nemitz v. Bell Telephone Co.*, 225 Pa.Super. 202, 310 A.2d 376 (1973).

## II

Addressing itself to the merits of the case, appellant Bell initially maintains that the evidence does not support a finding of malicious interference with appellee's business. We reject appellee's contention that Bell waived its right to argue this point on appeal by failing to raise it before the lower court *en banc*. To the contrary, a careful review of the record reveals that Bell proposed a written point for charge stating that the testimony failed to prove the elements of the alleged tortious conduct, that this point was specifically refused, that the refused point was incorporated in Bell's motion for judgment n. o. v., and the lower court briefly considered and

---

**9.** At least two lower courts in Pennsylvania have discussed the question of jurisdiction in cases similar to the one before us and concluded that the courts have jurisdiction of the matter. *Kilbourne v. Denver & Ephrata T & T Co.*, 26 Pa.D. & C.2d 441 (C.P. Lanc.1961); *Siter v. Bell Telephone Co.*, 6 Pa.D. & C. 257 (C.P. Phila.1925). Courts in other states have taken the same position. *Classified Directory Subscribers Ass'n v. Public Service Comm'n*, 127 U.S.App.D.C. 315, 383 F.2d 510 (1967); *Dollar-A-Day Rent-A-Car Systems, Inc. v. Pacific Telephone & Telegraph Co.*, 26 Cal. App.3d 454, 102 Cal.Rptr. 651 (1972); *Warner v. Southwestern Bell Telephone Co.*, 428 S.W.2d 596 (Mo.1968).

dismissed the argument in its opinion. We fail to see what else the appellant could do to preserve its objection.

██ The tort referred to by the parties and the lower court in this case as malicious interference with business has been variously designated by courts and commentators [10] but it has been specifically defined by the Restatement of Torts § 766 under the topic of inducing breach of contract or refusal to deal. Pennsylvania has adopted the Restatement definition which formulates the tort in this way: "one who, without a privilege to do so, induces or otherwise purposely causes a third person not to (a) perform a contract with another, or (b) enter into or continue a business relation with another is liable to the other for the harm caused thereby." The courts have refined this definition to consist of three elements, stating that "the actor must act (1) for the purpose of causing this specific type of harm to the plaintiff, (2) such act must be unprivileged, and (3) the harm must actually result." *Birl v. Philadelphia Electric Co.*, 402 Pa. 297, 301, 167 A.2d 472, 474 (1960). This concept has been applied not only to permit recovery for intentional interference with contractual relationships already established, but also for interference with prospective business relationships. *Glenn v. Point Park College*, 441 Pa. 474, 272 A.2d 895 (1971); *Glazer v. Chandler*, 414 Pa. 304, 200 A.2d 416 (1964).

██ When the averment is intentional interference with a prospective business relationship, as opposed to one presently existing, the courts have recognized the need for an additional requirement: the plaintiff must prove a reasonable likelihood or probability that the anticipated business arrangement will be consummated. To this effect the Supreme Court has stated: "Underlying

10. For a discussion of the history and appellations of the tort of intentional interference with business, *see Bruce Lincoln-Mercury, Inc. v. Universal C.I.T. Credit Corp.*, 325 F.2d 2 (3d Cir. 1963).

these requisites, of course, is the existence of a contract or of a prospective contractual relation between the third person and the plaintiff. Thus in this case the questions are whether the complaint discloses (1) a prospective contractual relation between [the third person] and plaintiffs, (2) the purpose or intent to harm plaintiff by preventing the relationship from occurring, (3) the absence of privilege . . . and (4) the occurrence of actual harm or damage to plaintiff as a result of the actor's conduct." *Glenn v. Point Park College*, supra, 441 Pa. at 479–80, 272 A.2d at 898.

In the case before us, the appellee has not indicated any specific contract or particular ongoing business arrangement which was terminated as a result of Bell's conduct in failing to provide adequate telephone service. A number of individuals, clients and other attorneys, testified that they had difficulty reaching Behrend by telephone, but there was no testimony or other evidence that a single client discontinued his attorney-client relationship with Behrend because of inability to reach him by telephone. Although evidence was introduced that some of appellee's regular clients expressed annoyance at the obstacles to communication presented by inability to locate their attorney readily in the directory or to obtain a clear line to his office, there was no proof that any individual sought the service of another attorney or otherwise abandoned the existing relationship with Behrend.

Despite the lack of proof that any files were closed due to Bell's inadequacies in providing telephone service, we are asked to infer from the testimony of appellee's clients and fellow attorneys that clients who would have brought their legal business to Behrend were discouraged from doing so because they were unable to contact him by telephone. In this respect, appellee refers again to the legion of electronic difficulties he experienced and the deletion of his individual business listing from the directory, recalling how vital a telephone is for an attor-

ney to communicate with his clients, to obtain referrals, and to establish contact with new clients. This argument in essence advances the position that Bell's conduct constituted an interference with prospective business relationships. However, whether contending that an interference occurred with established or prospective business relations, appellee relies entirely on demonstrating the general business necessity of having a directory listing and a properly functioning telephone, without proving the loss of any client or business advantage which would have been his had Bell delivered adequate service.

The tort of intentional interference with business requires, as a basis, that a business relationship be proved with some degree of specificity, at least to the point that future profit be a realistic expectation and not merely wishful thinking. It is true that where a prospective advantage is alleged, the plaintiff need not demonstrate a guaranteed relationship because "anything that is prospective in nature is necessarily uncertain. We are not here dealing with certainties, but with reasonable likelihood or probability. This must be something more than a mere hope or the innate optimism of the salesman." *Glenn v. Point Park College*, supra at 480, 272 A.2d at 898–99. As defined by the courts in this Commonwealth, the tort contemplates a relationship, prospective or existing, of some substance, some particularity, before an inference can arise as to its value to the plaintiff and the defendant's responsibility for its loss. *Glazer v. Chandler*, supra; *Richette v. Pennsylvania R.R.*, 410 Pa. 6, 187 A.2d 910 (1963); *Capecci v. Liberty Corp.*, 406 Pa. 197, 176 A.2d 664 (1962); *Birl v. Philadelphia Electric Co.*, supra; *Keifer v. Cramer*, 356 Pa. 96, 51 A.2d 694 (1947); *Bruce Lincoln-Mercury, Inc. v. Universal C.I.T. Credit Corp.*, 325 F.2d 2 (3d Cir. 1963); *Ebasco Services Inc. v. Pennsylvania Power & Light Co.*, 402 F. Supp. 421 (E.D.Pa.1975).

A review of the facts elicited in the case before us reveals that appellee has not offered proof manifesting with reasonable probability a business relationship or advantage between himself and a third party which in all probability would have been consummated had his name appeared in the directory and his telephone been functioning properly. At most he has described a general inconvenience which we are to assume had a deleterious effect in an unspecified way on the efficient operation of his office. Nowhere is it shown that a caller bringing profitable business to Behrend's office was unable to reach him by telephone and consequently took the business elsewhere. To that extent this case is simlar to *Bruce Lincoln-Mercury, Inc. v. Universal C.I.T. Credit Corp.*, supra. The plaintiff-appellee in that case alleged loss of prospective business due to appellant's admittedly loud, rude and publicly embarrassing manner of demanding repayment of a loan, first in a public restaurant and later in the appellee's place of business, in front of his customers. Applying Pennsylvania law, the federal court held that because no disability in obtaining customers or credit was shown to arise from these incidents, any conclusion that a loss resulted to appellee would be the product of impermissible speculation on the part of the jury. Similarly, in the present case, no loss of a business advantage, existing or prospective, was shown to result from Bell's poor service.

Having thus failed to provide proof of the underlying premise of the tort of interference with business relations, the existence and subsequent loss of a relationship or prospective relationship, as is required by *Glenn v. Point Park College*, supra, and *Birl v. Philadelphia Electric Co.*, supra, appellee cannot prevail on this count. Accordingly, we find that the lower court erred in refusing to grant judgment n. o. v. on the claim of intentional interference with business.

## III

Deciding that appellee's allegation of intentional interference with business cannot be supported does not defeat his claim, however.  His basic assertions of breach of contract and negligence,[11] in connection with the same conduct by Bell, are still viable.  Bell, in its answer and new matter, sought to defend these counts initially by denying the factual allegations of the complaint and maintaining that no breach of duty or contractual obligations occurred that was not covered by the release executed in 1966 by appellee Behrend.  Appellant Bell then petitioned for and was granted leave to amend its new matter to include a tariff provision limiting Bell's liability for interruptions or failure of telephone service and for omissions from or errors in the directories.  Appellee moved to strike the amended new matter challenging the validity of the tariff limitation as being contrary to law and public policy.  The motion to strike was granted,[12] and the case went to trial on the merits.

## A

Appellee again objects that Bell has waived its right to assert this defense.  He points out that although an exception was noted to Bell when its new matter was stricken, Bell failed to raise its objection again in a mo-

11.  Appellee alleged negligence, gross negligence, malice and intent in his complaint in trespass, as well as intentional interference with business.

12.  Judge McLean in his opinion granting the motion to strike carefully reviewed a number of Pennsylvania lower court cases concerning errors in telephone directories, as well as noting some influential decisions from other jurisdictions.  The decision to grant the motion was based on the Act of May 28, 1937, P.L. 1053, § 1310, 66 P.S. § 1500, which provides, among other things, that public utilities shall be liable for damages sustained as a result of acts or omissions done in contravention of the Public Utility Code unless the extent of such liability has been established by statute or common law.  Judge McLean determined that this provision rendered the tariff provision ineffective.  *Behrend v. Bell Telephone Co.*, 60 Pa.D. & C.2d 734 (C.P.Alleg.1972).

tion for judgment n. o. v. at the conclusion of the trial. We decide that in light of the unusual procedural posture of this case, the issue is not waived and we may properly review it.

The appellate courts of this Commonwealth have recently focused considerable attention on the concept of the waiver of issues on appeal. In *Dilliplaine v. Lehigh Valley Trust Co.*, 457 Pa. 255, 322 A.2d 114 (1974), the Supreme Court dispensed with the practice of reviewing those trial errors claimed to be basic and fundamental, although not raised at trial, in favor of declaring issues not brought to the trial court's attention finally waived for purpose of appellate review. The Court enumerated the following reasons for its decision: "Requiring a timely specific objection to be taken in the trial court will ensure that the trial judge has a chance to correct alleged trial errors. This opportunity to correct alleged errors at trial advances the orderly and efficient use of our judicial resources. First, appellate courts will not be required to expend time and energy reviewing points on which no trial ruling has been made. Second, the trial court may promptly correct the asserted error. . . Third, appellate courts will be free to more expeditiously dispose of the issues properly preserved for appeal. Finally, the exception requirement will remove the advantage formerly enjoyed by the unprepared trial lawyer who looked to the appellate court to compensate for his trial omissions." *Dilliplaine v. Lehigh Valley Trust Co.*, supra at 258–59, 322 A.2d at 116–17 (footnotes omitted). The Court's rationale focuses on the desirability of giving the lower court the opportunity to correct an error by pointing it out when it occurs rather than delaying until the moment is past, and the cold record is in the hands of the appellate court without the benefit of the lower court's thinking.

The waiver concept has been equally applied to civil, criminal and equitable matters. *Turnway Corp. v. Soffer,*

461 Pa. 447, 336 A.2d 871 (1975); *Commonwealth v. Clair,* 458 Pa. 418, 326 A.2d 272 (1974). It has been held in both criminal and civil cases that failure to file post-verdict motions generally precludes the appellate court from considering the alleged trial error even if an objection was made during trial. *Benson v. Penn Central Transp. Co.,* 463 Pa. 37, 342 A.2d 393 (1975); *Commonwealth v. Smalls,* 460 Pa. 436, 333 A.2d 853 (1975). The reasoning in *Dilliplaine* is regularly cited in support of these decisions. However, in *Commonwealth v. Blair,* 460 Pa. 31, 331 A.2d 213 (1975), where written post-trial motions were not filed but the error was presented to the lower court in oral argument and considered by it despite the lack of written motions, the Supreme Court reviewed the matter, but declared that in the future failure to properly preserve the objections would result in waiver. Furthermore, the Court continued to consider on appeal arguments not preserved in writing when the motions and oral argument occurred prior to the decision in *Blair* "because the longstanding practice of some courts of accepting and ruling on oral motions tended to mislead counsel into relying upon that practice . . . . Similarly, where, as here, all of the relevant events occurred before the Court's opinion in *Blair* served notice that compliance with [Pa.R.Crim.P.] 1123(a)'s requirement of written motions would be mandatory, it would be unfair to impose forfeiture of claims of error solely on the basis of failure to present written motions based on those claims." *Commonwealth v. Fortune,* Pa., 346 A.2d 783, 785 (1975) (footnotes omitted); *accord, Commonwealth v. Bailey,* 463 Pa. 354, 344 A.2d 869 (1975).

Although in the present case the lower court granted the motion to strike appellant's amended new matter containing one of the defenses asserted by Bell, it specifically stated that the correctness of its ruling regarding the invalidity of the tariff limitation could be tested by the appellate court following trial on the merits. The appel-

lant did what is could to preserve its objection at the
time the amended new matter was stricken and an excep-
tion to the court's action was noted in writing on the
order. The lower court judge filed a lengthy and care-
fully considered opinion on the issue thereby giving this
Court the benefit of his reasoning in making his decision.
Because the defense of the tariff limitations was stricken,
the trial on the merits of the case naturally proceeded
without any mention whatsoever of tariff or contractual
limitations of liability. In such a situation the proper
method of preserving the objection for appeal has been
far from clear.

Because appellant's object was to have the jury
verdict reduced to the amount set by the tariff limitation,
the proper post verdict motion would have been for a
judgment n. o. v. However, a point for binding instruc-
tions prior to the submission of the case to a jury is a
prerequisite to a motion for judgment n. o. v. *Dora v.
Dora,* 392 Pa. 433, 141 A.2d 587 (1958); Act of April
22, 1905, P.L. 286, § 1, *as amended* 12 P.S. § 681 (Supp.
1976–77). Points for charge, in which points for bind-
ing instruction are included, are designed to put before
the jury various instructions to help them resolve the
issues before them. "It is hornbook law that instruc-
tions given to a jury must be confined to the issues raised
in the pleadings and the facts developed by the evidence
in support of such issues." *Heymann v. Electric Service
Mfg. Co.,* 412 Pa. 338, 345, 194 A.2d 429, 432 (1963);
*accord,* 6 Standard Pa. Practice 402 (1960, Supp.1975).
Where, as here, the defense presently asserted was
stricken from the pleadings and no evidence concerning
it was presented to the jury, it is not immediately obvi-
ous that an instruction regarding it should have been
submitted to the unsuspecting jury.

Although we would expect a conscientious attorney who
should be familiar with the line of cases developing the
concept of waiver discussed above to take the precaution

of raising in points for charge those issues expected to be advanced on appeal, this case compels a different conclusion. The points for charge herein were filed on May 17, 1974, and the motion for judgment n. o. v. was filed on May 22, 1974, a month and a half before *Dilliplaine v. Lehigh Valley Trust Co.*, supra, was handed down establishing the rationale for firmly enforcing waiver and initiating the line of decisions which followed.[13]  The necessity for submitting points for instruction on a matter not previously before the jury in order to protect the record for appeal was not clear.  Furthermore, the appeal process is not disadvantaged in the manner suggested in *Dilliplaine.*  A lower court ruling on the specific issue was made after both sides had presented their views, a careful opinion written, and an exception was noted on the record.  Nor is this an example of an unprepared trial attorney, a specter called up in *Dilliplaine* as the source of many appellate court woes.  Attorneys for both sides of this case demonstrated an admirable level of competence and preparation in every step of this complex matter.  It is our opinion that where the procedure is less than clear, and the events occurred before *Dilliplaine* and its progeny demonstrated the necessity of reasserting error at every step of the process, it would be unfair to impose forfeiture of claims of error solely on the basis of failure to present points for instruction on an issue not before the jury.  *Commonwealth v. Fortune,* supra.  By reaching this conclusion a correct and complete disposition of the merits can be made and judicial resources conserved by preventing relitigation of unresolved matters.

### B

In the trial below, Bell presented a vigorous defense directed to proving that the service it provided appellee was reasonably adequate and that his directory listings

---

**13.**  *Dilliplaine v. Lehigh Valley Trust Co.,* 457 Pa. 255, 322 A.2d 114 (1974) was filed July 1, 1974.

were published in accordance with instructions received from Mrs. Behrend, appellee's office manager. Neither at trial nor in the present appeal does appellant Bell maintain that no duty existed on its part to correctly list subscribers' names in its directories or provide uninterrupted telephone service. Rather it contends that even if it breached its duty, its liability is limited by the following provisions in its tariffs: "The liability of the Telephone Company for damages arising out of failure to comply with a customer's direction to install, restore or terminate service, or mistakes, omissions, interruptions, delays, or errors or defects in transmission, or failure or defects in the Telephone Company's equipment [facilities] occurring in the course of furnishing service and not caused by the negligence of the customer . . . shall in no event exceed an amount equivalent to the proportionate charge to the customer for the period of service during which such failure, mistake, omission, interruption, delay, or error or defect in transmission, or failure or defect in the Telephone Company's equipment [facilities] occurs.

. . .

"The Telephone Company, except as provided herein, shall not be liable for damage claimed on account of errors in or omission from its directories nor for the result of the publication of such errors in the directory . . . . Claim for damages on account of interruptions to service due to errors in or omissions of directory listings will be limited to an amount equivalent to the proportionate charge for that part of the customer's service which is impaired, but not to exceed one-half the local service charges for the service items affected for the period from the date of issuance of the directory in which the mistake occurred to the date of issuance of a new directory containing the proper listing." [14]

14. Copies of tariffs filed by public utilities are on file with the PUC and with the public utility. *See* Act of May 28, 1937, P.L. 1053, § 302, 66 P.S. § 1142.

Public utilities are authorized to file tariffs, which can include schedules of rates, and all rules, regulations, practices or contracts involving rates. Act of May 28, 1937, P.L. 1053, § 2(22), *as amended,* 66 P.S. § 1102(22); Act of May 28, 1937, P.L. 1053, § 302, 66 P.S. § 1142. Tariffs lawfully established, including limitations of liability, have the effect of law and are binding on both utility and subscriber. *Cray v. Pennsylvania Greyhound Lines, Inc.,* 177 Pa.Super. 275, 110 A.2d 892, *allocator refused,* 178 Pa.Super. *xxx* (1955). Appellant concedes that the tariff limitation applies only to such failures, omissions or mistakes as are the result of negligence attributable to Bell's employees and not to damages occasioned by wanton, wilful misconduct.

Appellee maintains that the tariff quoted above is ineffective because it is in conflict with the Act of May 28, 1937, P.L. 1053, § 1310, 66 P.S. § 1500, providing that public utilities' liability "for negligence, as heretofore established by statute or by common law, shall not be held or construed to be altered or repealed by any of the provisions of this act . . . ." In addition he posits that the tariff, like an adhesion contract, is against public policy and should not be recognized by the courts.

The effectiveness of a public utility's limitation of liability for negligence, included in a tariff lawfully filed with the PUC, has, to our knowledge, never been reviewed by an appellate court in this Commonwealth. The issue has come before the lower courts on a number of occasions, resulting in a divergence of opinion. The limitation of liability was criticized as against public policy in *Shapiro v. Bell Telephone Co.,* 92 P.L.J. 10 (Pa.C.P.Alleg.1942); but upheld because the court believed itself bound by prior authority.[15] In *Newsham v. United Telephone Co.,* 2 Pa.D. & C.2d 312 (C.P.Adams 1954), how-

---

**15.** The court did not cite the authority it had in mind for this proposition. There evidently was no higher authority in Pennsylvania at the time that could compel its decision.

ever, the court saw no impediment to invalidating a tariff exempting the telephone company from liability for directory errors and declared it to be void as against public policy. Limitations on liability have been upheld in the following cases: *Mandel v. Bell Telephone Co.*, 48 Pa.D. & C.2d 199 (C.P.Phila.1967) (error in yellow pages advertisement a matter of private contract); *Triangle Furniture & Appliance, Inc. v. Bell Telephone Co.*, 109 P.L.J. 205 (Pa.C.P.Alleg.1961) (reasonableness of limitation matter within PUC jurisdiction).

Of the other jurisdictions which have considered the issue, the great majority have upheld limitations of liability similar to that in Bell's tariff.[16] This

---

**16.** The tariffs are generally considered to apply to those services which are indispensible to an adequate telephone system and thus within the regulatory power of the PUC. Such essential features would clearly include uninterrupted service and an accurate alphabetical directory for subscribers. *McTighe v. New England Telephone & Telegraph Co.*, 216 F.2d 26 (2d Cir. 1954); *Waters v. Pacific Telephone Co.*, 12 Cal.3d 1, 114 Cal.Rptr. 753, 523 P.2d 1161 (1974); *Wheeler Stuckey, Inc. v. Southwestern Bell Telephone Co.*, 279 F.Supp. 712 (W.D.Okl.1967). However, yellow pages listings and advertisements are generally considered outside the realm of necessary services and are usually the subject of a private contract between the customer and the telephone company. *Classified Directory Subscribers Ass'n. v. Public Service Comm'n.*, 127 U.S.App.D.C. 315, 383 F.2d 510 (1967); *Advance Service, Inc. v. General Telephone Co.*, 187 So.2d 660 (Fla.App.1966); *State ex rel. Mountain States Telephone & Telegraph Co. v. District Court*, 160 Mont. 443, 503 P.2d 526 (1972); *Federal Building Service v. Mountain States Telephone & Telegraph Co.*, 76 N.M. 524, 417 P.2d 24 (1966); *but see, Dollar-A-Day Rent-A-Car Systems, Inc. v. Pacific Telephone & Telegraph Co.*, 26 Cal.App.3d 454, 102 Cal. Rptr. 651 (1972). These contracts, containing limitations of liability similar to those in the tariffs, are generally enforced against the customer even in some jurisdictions which have allowed recovery to subscribers against the telephone company for errors in white pages listings. *Wilson v. Southern Bell Telephone & Telegraph Co.*, 194 So.2d 739 (La.App.1967).

In the present case, one of appellant's complaints was the omission of his individual business listing in the yellow pages. Because appellant was a business subscriber he was entitled to have his name listed in the yellow pages under the classification "attorneys" as part of his service. By providing this service Pennsylvania courts have concluded that the telephone company has dedicated that portion of the classified directory to the public, even

position is generally supported by the view that the tariffs setting rates and limiting liability, when filed under authority of law, have the force of law and their reasonableness is to be determined by the Public Utility Commission. The Commission's exclusively granted supervisory and regulatory powers and its special expertise are thought to designate it the exclusive body to consider questions relating to regulation and structure of the utilities and service to the consumer. Therefore, the Commission is the appropriate body to evaluate the tariffs filed with it and determine their reasonableness, fairness and consistency with established policies. The courts' jurisdiction in considering issues which involve public utilities and the regulation thereof is in " 'aid and not in derogation of the jurisdiction of the commission,' " *Waters v. Pacific Telephone Co.*, 12 Cal.3d 1, 11, 114 Cal. Rptr. 753, 759, 523 P.2d 1161, 1167 (1974) (emphasis omitted) *quoting Vila v. Tahoe Southside Water Utility*, 233 Cal.App.2d 469, 479, 43 Cal.Rptr. 654, 661 (1965) and thus requires the application of the commission approved tariffs to the facts of the given case. The following cases have expressed this principle in support of upholding tariff limitations: *McTighe v. New England Telephone & Telegraph Co.*, 216 F.2d 26 (2d Cir. 1954); *Stern v. General Telephone Co.*, 50 Cal.App.3d 538, 123 Cal.Rptr. 373 (1975); *Dollar-A-Day Rent-A-Car Systems, Inc. v. Pacific Telephone & Telegraph Co.*, 26 Cal. App.3d 454, 102 Cal.Rptr. 651 (1972); *Bird v. Chesapeake & Potomac Telephone Co.*, 185 A.2d 917 (D.C.Mun. App.1962); *Southern Bell Telephone & Telegraph Co. v. Invenchek*, 130 Ga.App. 798, 204 S.E.2d 457 (1974); *Warner v. Southwestern Bell Telephone Co.*, 428 S.W.2d

though any additional, paid listing or advertisement is considered a matter of private contract. *Felix v. PUC*, 187 Pa.Super. 578, 146 A.2d 347, *allocatur refused*, 187 Pa.Super. *xxviii* (1959). Thus, appellant's yellow pages listing is subject to the limitation of the tariff rather than that contained in the contract for additional yellow pages listings. *See also Classified Directory Subscribers Ass'n. v. Public Service Comm'n.*, supra.

596 (Mo.1968); *State ex rel. Mountain States Telephone & Telegraph Co. v. District Court*, 160 Mont. 443, 503 P.2d 526 (1972); *Wade v. Southwestern Bell Telephone Co.*, 352 S.W.2d 460 (Tex.Civ.App.1961). *Compare Product Research Associates v. Pacific Telephone & Telegraph Co.*, 16 Cal.App.3d 651, 94 Cal.Rptr. 216 (1971) *with Waters v. Pacific Telephone Co.*, supra. The cases go further in support of their holding, reasoning that the rate structure for the telephone service set by the utility company is dependent upon the limitation of liability expressed in the tariff. *Waters v. Pacific Telephone Co.*, supra; *Southern Bell Telephone & Telegraph Co. v. Invenchek*, supra; *Warner v. Southwestern Bell Telephone Co.*, supra. Additionally, the observation is made that because utilities are strictly regulated in rights and privileges, regulation of their liabilities to some extent is necessary to strike a balance of benefits and burdens. *Waters v. Pacific Telephone Co.*, supra; *State ex rel. Mountain States Telephone & Telegraph Co. v. District Court*, supra. These factors render inappropriate the application of public policy considerations which might be advanced in disputes between private parties. *Southwestern Sugar & Molasses Co. v. River Terminals Corp.*, 360 U.S. 411, 79 S.Ct. 1210, 3 L.Ed.2d 1334 (1959).

Other courts have held that the reasonableness of a liability limitation provision in a tariff is for the courts to determine, but find the limitation reasonable for virtually the same reason that other jurisdictions mentioned in leaving the matter in the hands of the commission: the interrelationship of the limitation with the rate structure or with the general scheme of regulation. *Holman v. Southwestern Bell Telephone Co.*, 358 F.Supp. 727 (D. Kan.1973). Tariff limitations have also been justified by reference to the mechanical nature of the telephone system, subject to mechanical failure, in which the personal element is substantially eliminated. *Wilkinson v. New England Telephone & Telegraph Co.*, 327 Mass. 132,

97 N.E.2d.413 (1951).  The power of a public utility to limit its liability through its tariffs in other instances has been simply upheld or declared reasonable without explanation.  *Wheeler Stuckey, Inc. v. Southwestern Bell Telephone Co.*, 279 F.Supp. 712 (W.D.Okl.1967); *Enlow v. City of Carpinteria*, 20 Cal.App.3d 956, 98 Cal.Rptr. 129 (1971); *Petrossi v. Ontario Properties, Inc.*, 55 Misc. 2d 601, 285 N.Y.S.2d 928 (1968).

Public policy has been proposed as a basis for declaring the tariff limitations invalid.  In a case concerning errors in yellow pages listings and advertisements, as opposed to tariff limitations for errors in white pages listings or poor service in general,[17] the Supreme Court of North Carolina reversed the Court of Appeals finding that the inequality of bargaining power did not exist and holding that the limitation was not contrary to public policy. *Gas House, Inc. v. Southern Bell Telephone & Telegraph Co.*, 289 N.C. 175, 221 S.E.2d 499 (1976).[18]  In at least one jurisdiction, plaintiffs have recovered against the telephone company without any discussion of the validity of limitation provisions.  *Loridans v. Southern Bell Telephone & Telegraph Co.*, 172 So.2d 323 (La.App.1965); *Scheinuk the Florist, Inc. v. Southern Bell Telephone & Telegraph Co.*, 128 So.2d 683 (La.App.1961).

We elect to join the majority of jurisdictions in upholding tariff limitations. In so doing we recognize the power vested in the PUC to evaluate the reasonableness of tariffs or regulations filed with it and to determine whether the provisions therein are compatible with

17.  See note 16 for an explanation of the difference between tariffs and private contracts as they relate to services which are deemed necessary (white pages listings) and yellow pages listings.

18.  Michigan appeared at first to be taking this position. *Allen v. Michigan Bell Telephone Co.*, 18 Mich.App. 632, 171 N.W.2d 689 (1969).  This opinion was criticized however in *Allen v. Michigan Bell Telephone Co.*, 61 Mich.App. 62, 232 N.W.2d 302 (1975).  In *Valentine v. Michigan Bell Telephone Co.*, 388 Mich. 19, 199 N.W. 2d 182 (1972) the court found for the telephone company without discussing the validity of the limitation provision.

the code and policies of the commission and consistent with its regulatory scheme. Because Bell's tariff was properly filed under the law, we cannot do otherwise than enforce its provisions as they apply to both Bell and its customer. In the present case where omission from the directories and poor service are alleged, application of the tariff would result in the limited recovery provided for in the tariff if the damages were caused by the negligence of Bell or its employees. However, the limitation in the tariff is not enforceable if the damage is caused by willful or wanton conduct by Bell. The weight of authority supports interpreting the tariff limitations to extend only to acts of ordinary negligence and exclude conduct found to be willful, malicious or reckless.[19] *Holman v. Southwestern Bell Telephone Co.,* supra; *Wheeler Stuckey, Inc. v. Southwestern Bell Telephone Co.,* supra; *Waters v. Pacific Telephone Co.,* supra; *Sommer v. Mountain States Telephone & Telegraph Co.,* 21 Ariz. App. 385, 519 P.2d 874 (1974); *Warner v. Southwestern Bell Telephone Co.,* supra; *Thon v. New York Telephone Co.,* 55 Misc.2d 586, 285 N.Y.S.2d 926 (1967); *see also Stern v. General Telephone Co.,* supra.

To summarize briefly, it will be noted that it is necessary to retry this case eliminating any instruction on the tort of intentional interference with business. If appellant Bell's acts are found on retrial not to be willful or malicious, and Bell is found to be liable to appellee Behrend, damages must be limited to a maximum of the amount specified in the applicable tariff provision. If appellant Bell's acts are found to be willful, malicious

---

**19.** We must note that in the many cases in which subscribers have sued telephone companies for conduct similar to that alleged here, wilfulness or recklessness is rarely, if ever, found. For collections of cases on mistakes in directories, see *Annot.* 92 A.L.R.2d 917 (1963); for those on failures in service, see *Annot.* 67 A.L.R. 3d 76 (1975). *But see Sommer v. Mountain States Telephone & Telegraph Co.,* 21 Ariz.App. 385, 519 P.2d 874 (1974); *Held v. New York Telephone Co.,* 73 Misc.2d 582, 342 N.Y.S.2d 665 (1973).

or reckless, the tariff limitation will not apply and appellant Bell can be held liable for both compensatory and punitive damages.

Reversed and remanded for a new trial consistent with this opinion.