**TECHNO CORPORATION, Plaintiff,**

v.

**DAHL ASSOCIATES, INC. George L. Dahl, John H. Stillwaggon, Davalco, Inc., Defendants.**

Civ. A. No. 81–59 Erie.

United States District Court, W. D. Pennsylvania.

March 31, 1982.

Eugene A. Brew, Jr., Erie, Pa., for plaintiff.

Ted J. Padden, Erie, Pa., for defendants.

## MEMORANDUM OPINION

WEBER, Chief Judge.

A recurring theme in this diversity case has been the plaintiff's efforts to assert *in personam* jurisdiction over several individual defendants. The motions presently pending before this court require us, once again, to return to this theme. The plaintiff in this action, Techno Corporation, is a Pennsylvania company which manufactures tornado dampers for use on nuclear power projects. On March 16, 1981, the plaintiff filed a complaint in this court. In this complaint plaintiff named Dahl Associates, Inc. and its two principals, George Dahl and John Stillwaggon, as defendants. These three defendants are all residents of New Jersey.

The plaintiff's complaint, as originally framed, proceeded in four counts. In Count I the plaintiff alleged that Dahl Associates, Inc. breached a written agreement to act as Techno's exclusive sales agent in certain counties of New York and New Jersey. Specifically the plaintiff alleged that Dahl Associates, while purportedly acting as Techno's exclusive agent, sold the products of direct competitors of Techno. Counts II, III and IV of the Plaintiff's complaint were directed against Dahl and Stillwaggon individually and alleged that these defendants wrongfully induced Dahl Associates, Inc., to break its contract with the plaintiff.

The defendants responded to this complaint by filing a motion to dismiss. This motion focused on the individual defendants, Dahl and Stillwaggon, and argued that they were not subject to the personal jurisdiction of this court.

We agreed and, in an opinion and order dated September 22, 1981, dismissed the plaintiff's complaint against defendants Dahl and Stillwaggon. In our opinion we acknowledged that these individuals had numerous business contacts with Pennsylvania. However, all of these contacts had occurred while the defendants were acting in their corporate capacities as officers of Dahl Associates, Inc. Following a line of cases we held that these actions, taken in a

corporate capacity, did not give rise to personal jurisdiction over the individual defendants. *See, Techno Corporation v. Dahl Associates, Inc.,* 521 F.Supp. 1036, 1037 (W.D.Pa.1981).

We also rejected plaintiff's argument that jurisdiction existed over these individual defendants by virtue of 42 Pa.C. S.A. § 5322(a)(4). That section subjects individuals to the long-arm jurisdiction of Pennsylvania courts when they cause "any harm or tortious injury in this Commonwealth by an act or omission outside this Commonwealth." According to the plaintiff, Dahl and Stillwaggon, by inducing Dahl Associates to breach its contract, committed a "tortious injury in this Commonwealth" giving rise to personal jurisdiction in this court. In rejecting this argument we adopted the position that the plaintiff's complaint, in its present form, merely alleged that the defendants' breach of contract incidentally damaged Techno's business relations with others. Such an allegation, by itself, is insufficient under Pennsylvania law to establish an actionable tort. *See, Glazer v. Chandler,* 414 Pa. 304, 308, 200 A.2d 416 (1964). Because the plaintiff's complaint failed to state any cause of action sounding in tort, we held that long-arm jurisdiction could not be asserted over defendants Dahl and Stillwaggon by virtue of 42 Pa.C.S.A. § 5322(a)(4).

Following this opinion and order Techno twice moved to amend its complaint. In these amendments the plaintiff once again asserted claims against Dahl and Stillwaggon individually. These amendments also named Davalco, Inc., a New Jersey corporation owned by Dahl and Stillwaggon, as a defendant in this action.

At the heart of these amendments is the allegation that Dahl, Stillwaggon and Davalco, Inc., have tortiously interfered with Techno's economic relations with a third-party, Ebasco Services Inc. In its amended complaint the plaintiff recites that Ebasco was the construction engineer on three different nuclear power projects. From 1974 to 1979 Techno and Ebasco engaged in extensive on-going negotiations aimed at developing tornado dampers for use on these projects. As a result of these negotiations the plaintiff prepared detailed specifications for these dampers. On the basis of these dealings between the parties the plaintiff believed that it was virtually assured of receiving the contracts for these projects. The plaintiff further alleged that in 1979 Dahl, Stillwaggon and Davalco, Inc. encouraged Quality Air Design, a competitor of Techno, to submit bids on these nuclear power projects. According to the plaintiff these defendants assisted Quality Air Design by providing it with specifications and pricing information developed by Techno for these projects. Armed with this information Quality Air Design successfully obtained the contracts for these projects. The plaintiff's amended complaint concludes that all of this action was taken by the defendants with the specific intent and purpose of frustrating Techno's prospective economic relationship with Ebasco.

The defendants have challenged the adequacy of these proposed amendments, once again arguing that the allegations in these pleadings are insufficient to subject them to the personal jurisdiction of this court. The defendants' jurisdictional challenge in this case is essentially two-fold. First, they argue that the plaintiff's amendments fail to state any valid cause of action against them. Because the plaintiff has not pleaded a proper tort cause of action, defendants argue that it cannot assert jurisdiction over them under 42 Pa.C.S.A. § 5322(a)(4). In addition, defendants contend that personal jurisdiction does not exist over them even if they have arguably committed a tort resulting in injury in this Commonwealth. Defendants argue that the mere commission of a tort outside this Commonwealth, resulting in injury in Pennsylvania, does not provide sufficient contact with this forum to justify the assertion of *in personam* jurisdiction.

We feel, however, that the plaintiff's amended pleading does set forth a valid cause of action under Pennsylvania law. Moreover, we believe that the facts pleaded by the plaintiff establish sufficient contacts with this state to justify the exercise of *in personam* jurisdiction by this court.

■ Turning initially to the question of whether the plaintiff has stated a valid cause of action it is clear that the tort of intentional interference with prospective business relations is recognized in Pennsylvania law. *See, Birl v. Philadelphia Electric Co.,* 402 Pa. 297, 167 A.2d 472 (1960); *Glenn v. Point Park College,* 441 Pa. 474, 272 A.2d 895 (1971). Pennsylvania courts have adopted the Restatement definition of this tort. Under this definition intentional interference with prospective contractual relations is described in the following terms:

§ 766B. Intentional Interference with Prospective Contractual Relation

One who intentionally and improperly interferes with another's prospective contractual relation (except a contract to marry) is subject to liability to the other for the pecuniary harm resulting from loss of the benefits of the relation, whether the interference consists of

(a) inducing or otherwise causing a third person not to enter into or continue the prospective relation or

(b) preventing the other from acquiring or continuing the prospective relation.

Restatement (Second) of Torts § 766B. Therefore at a minimum Pennsylvania law requires that a plaintiff must demonstrate the following in order to prevail on an action for intentional interference with prospective contractual relations: (1) that a prospective contractual relationship existed between the plaintiff and some third party; (2) that the defendants interfered with this relationship with the purpose or intent of harming the plaintiff by preventing the relationship from occurring; (3) that this interference was not privileged; (4) that the plaintiff suffered actual harm or damage as a result of the defendants' actions. *Behrend v. Bell Telephone Co.,* 242 Pa.Super. 47, 363 A.2d 1152, 1159 (1976).

■ In this case we feel that the plaintiff's amended complaint satisfies the requisites of Pennsylvania law. Accordingly, on its face the complaint states a valid cause of action. The plaintiff's recital of an on-going five year relationship between Techno and Ebasco, and its description of the efforts made by Techno to procure Ebasco's business, clearly are sufficient to establish that a prospective contractual relationship existed between the parties. The plaintiff's complaint also sets forth facts which would support the conclusion that Dahl, Stillwaggon and Davalco, Inc. intentionally interfered with this relationship, knowing that this interference would damage the plaintiff. Finally, the plaintiff's amended complaint alleges that Techno was in fact damaged as a result of this action.

The defendants insist, however, that the plaintiff has not stated a valid cause of action for two reasons. First, defendants contend that their actions were privileged. In support of this contention the defendants point to § 768 of the Restatement (Second) of Torts. That section provides that:

§ 768. Competition as Proper or Improper Interference

(1) One who intentionally causes a third person not to enter into a prospective contractual relation with another who is his competitor or not to continue an existing contract terminable at will does not interfere improperly with the other's relation if

(a) the relation concerns a matter involved in the competition between the actor and the other and

(b) the actor does not employ wrongful means and

(c) his action does not create or continue an unlawful restraint of trade and

(d) his purpose is at least in part to advance his interest in competing with the other.

\* \* \* \* \* \*

Restatement (Second) of Torts § 768. Defendants argue that any actions that they took in this case were taken as competitors of Techno and, therefore, are entitled to this privilege. We do not feel, however, that the defendants' assertion of this limited privilege defeats the plaintiff's complaint at this time.

At the outset we feel that there is a threshold problem with the position urged by defendants. The plaintiff in this case is a manufacturer of tornado dampers. The plaintiff's amended complaint does not allege that the defendants manufacture these products or any comparable equipment. Rather it characterizes defendants Dahl, Stillwaggon and Davalco, Inc. as sales agents. In this capacity these defendants act as middle men assisting manufacturers by finding purchasers for their goods. Thus the plaintiff and defendants are not, in any sense, direct competitors. Since the privilege described in § 768 of the Restatement is limited to individuals who compete with one another, its applicability to this case is questionable.

The defendants allege however that, as a practical matter, they were competing with Techno because they were working on behalf of Quality Air Design, Inc., a firm that directly competes with the plaintiff. We doubt that this bare allegation, by itself, is enough to bring the defendants within the scope of this limited competitive privilege. However, even if the defendants are in some sense competitors of the plaintiff they still cannot successfully assert this privilege on the present record. As the Restatement indicates the availability of this privilege involves consideration of a number of factors, including: (1) the defendants' purpose in interfering with the prospective economic relationship; and (2) the means used by the defendants in interfering with the plaintiff's prospective contractual relationship.

In this case, the plaintiff has alleged that the defendants acted with a malicious purpose, i.e. with the intent to harm Techno Corporation. Moreover, plaintiff's amended complaint asserts that the defendants gave pricing information and specifications developed by Techno to Quality Air Design in order to help Quality Air procure the Ebasco contracts. Presumably much of this information was regarded by Techno as confidential. Dissemination of such confidential information by the defendant could constitute such a wrongful act as to bar them from asserting the competitive privilege.

At any rate these questions of motivation and means require development of a factual record and cannot be disposed of through a motion to dismiss.

Finally defendants argue that the plaintiff's amended complaints still do nothing more than allege a breach of contract which incidentally damages plaintiff's business relations with third parties. Those pleadings, therefore, do not state a valid cause of action under Pennsylvania law. *Glazer v. Chandler*, supra.

We disagree. The plaintiff has now pleaded facts sufficient to establish a cause of action for intentional interference with prospective economic relations. While plaintiff's proofs at trial ultimately may not support the allegations in these pleadings, that fact alone does not justify dismissal at this time.

■ Having concluded that the plaintiff's amended complaint states a valid cause of action under Pennsylvania law we now turn to the question of whether it justifies the exercise of *in personam* jurisdiction by this court. Consideration of any question of *in personam* jurisdiction involves inquiry into two distinct questions. First, does the law of the state in which the federal court sits confer *in personam* jurisdiction over the out-of-state defendants? Second, does the exercise of this *in personam* jurisdiction violate constitutional due process limitations? *See, Vespe Contracting Co. v. Anvan Corporation*, 433 F.Supp. 1226 (E.D.Pa.1977).

■ In this case there is no dispute that Pennsylvania's long-arm statute would confer jurisdiction over these defendants. These non-resident defendants are accused of taking actions in Ohio which resulted in a tortious injury to a Pennsylvania corporation. In such a case Pennsylvania law clearly provides for the exercise of personal jurisdiction. *See,* 42 Pa.C.S.A. § 5322(a)(4).

The question therefore becomes one of the constitutional limits of *in personam* jurisdiction. Historically the personal jurisdiction of a court extended only as far as the territorial limits of the state in which that

court sat. *Pennoyer v. Neff*, 95 U.S. 714, 720, 24 L.Ed. 565 (1878). This wooden view of the scope of *in personam* jurisdiction was rejected by the United States Supreme Court in *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). In its place the Supreme Court adopted a rule that allowed a state court to exercise personal jurisdiction over non-resident defendants when there existed some "minimum contacts" between the defendants and the forum state. *International Shoe Co. v. Washington*, supra, at 316, 66 S.Ct. at 158. The requirement that some minimum contact exist between the defendants and the forum in which they were to be tried was designed to serve two related functions. First, it protected defendants from litigation in distant and inconvenient forums. Second, it established equitable limitations on the power of state courts to reach out beyond their territorial limits and assert judicial authority. *World-Wide Volkswagon Corp. v. Woodson*, 444 U.S. 286, 292, 100 S.Ct. 559, 564, 62 L.Ed.2d 490 (1980). Moreover, underlying this entire analytical framework was a fundamental concern for fairness; a belief that, at a minimum, due process requires a defendant have sufficient contact with the forum state "that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, supra, 326 U.S. at 316, 66 S.Ct. at 158.

With these general guideposts in mind we now address the narrow question raised by the parties in this case: When can *in personam* jurisdiction be exercised over a non-resident defendant on the basis of tortious acts occurring outside the territorial limits of the forum state? In considering this question we recognize, at the outset, that we do not write on a blank slate. The question of *in personam* jurisdiction over non-resident defendants in tort cases has received frequent consideration by both the courts and commentators. *See*, 24 A.L.R.3d 532 and cases cited therein. Because resolution of this issue frequently turns on the facts attending the individual case, generalization is not easy in this area. A few broad conclusions can be made with some certainty, however. For example, the mere fact that the defendant committed a tortious act outside the forum state resulting in injury within that state does not, without more, subject the defendant to personal jurisdiction by that state. *See, Kurtz v. Drauer*, 434 F.Supp. 958 (E.D.Pa.1977); *Aamco Automatic Transmissions, Inc. v. Tayloe*, 368 F.Supp. 1283 (E.D.Pa.1973). On the other hand courts have frequently allowed the exercise of personal jurisdiction by the forum state when it has been found that the harm caused by the defendants' tortious act was foreseeable. *See, Rusack v. Harsha*, 470 F.Supp. 285 (M.D.Pa.1978); *Kipperman v. McCome*, 422 F.Supp. 860, 875 (N.D.Cal.1977); *Continental Oil Co. v. Atwood & Morrill Co.*, 265 F.Supp. 692 (D.C. Mont.1967).

The United States Supreme Court has recently had occasion to discuss the constitutional limitations on *in personam* jurisdiction in tort cases. In *World-Wide Volkswagon Corp. v. Woodson*, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980), the Supreme Court addressed the question "whether, consistently with the due process clause of the Fourteenth Amendment, an Oklahoma court may exercise *in personam* jurisdiction over a non-resident [defendant] . . . when the defendants' only connection with Oklahoma is the fact that an automobile sold [by it] in New York to New York residents became involved in an accident in Oklahoma." The Supreme Court of Oklahoma had earlier held that such an exercise of *in personam* jurisdiction was consistent with the due process limitations established by *International Shoe* and its progeny.

In its opinion the United States Supreme Court reversed the judgment of the Oklahoma Court. In reaching its conclusion the Court discussed the significance of foreseeability of injury to a determination of personal jurisdiction. The Court concluded that foreseeability that some harm could occur in the forum state was not, by itself, sufficient to establish personal jurisdiction. The Court did not, however, conclude that questions of foreseeability were wholly ir-

relevant to an analysis of *in personam* jurisdiction. Instead the Court stated that "the foreseeability that is critical to due process analysis is not the mere likelihood that a product will find its way into the forum state. Rather, it is that the defendants' conduct in connection with the forum state was such that he should reasonably anticipate being hailed into court there. [citations omitted]. The due process clause, by insuring the 'orderly administration of the laws' . . . gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit." *World-Wide Volkswagon Corp. v. Woodson, supra,* 444 U.S. at 297, 100 S.Ct. at 567. Thus *World-Wide Volkswagon Corp.* should not be read to totally preclude the assertion of *in personam* jurisdiction over nonresident defendants whose tortious conduct has resulted in harm in the forum state. Quite the contrary, subsequent cases have held that "when the place of the harm [is] clearly and specifically foreseeable," *World-Wide Volkswagon Corp. v. Woodson,* 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980) does not limit the reach of a "tort-out, harm-in" long arm statute. *Schwilm v. Holbrook,* 661 F.2d 12 (3d Cir. 1981), (considering the constitutionality of 42 Pa.C.S.A. § 5322(a)(4)).

 In this case we feel that the defendants' connections with Pennsylvania are such that they should reasonably have anticipated being required to defend litigation here. The plaintiff's amended complaint in this case alleged that in 1979 these defendants intentionally and purposefully interfered with Techno's prospective economic relations. At that time the individual defendants had been dealing with the plaintiff for five years and were certainly aware of the fact that Techno was a Pennsylvania corporation.[1] Therefore, at the time these defendants took what is alleged to be an intentional act it was clearly fore-

seeable that their actions would have a direct impact in Pennsylvania. This being the case we believe that the exercise of *in personam* jurisdiction by this court is entirely reasonable and appropriate.

An appropriate order will issue.

---

1. The original sales agreement between Techno and Dahl Associates, Inc., an agreement that was signed by the defendant George Dahl, indicates on its face that Techno is a Pennsylvania company.