Joseph Delph and Violet Delph, Petitioners *v.* Commonwealth of Pennsylvania, Pennsylvania Public Utility Commission and Metropolitan Edison Company, Respondents.

Submitted on briefs, March 9, 1979, to Judges WILKINSON, JR., MENCER and ROGERS, sitting as a panel of three.

*John T. Stieh,* and *Kayton, Schneider, Levy and Stieh,* for petitioners.

*Allison K. Turner,* Assistant Counsel, *Shirley Rae Don,* Deputy Chief Counsel, *George M. Kashi,* Acting Chief Counsel, *Samuel B. Russell, Eric L. B. Strahn,* and *Ryan, Russell & McConaghy,* for respondents.

OPINION BY JUDGE MENCER, October 22, 1979:

Joseph and Violet Delph (petitioners) appeal a Pennsylvania Public Utility Commission (PUC) order denying the relief sought in their complaint filed with the PUC. We affirm.

On April 10, 1973, Metropolitan Edison Company (Met-Ed) informed, by letter, the developer of Pocono Mountain Woodland ˙Lakes, a subdivision in Pike County, Pennsylvania, that it would supply electricity to the subdivision "[u]pon application for service . . . in accordance with our policies and such rules and regulations as are set forth by the Public Utility Commission." A paraphrase of the letter was subsequently incorporated by the developer into his sales contracts for the purchase of lots in the subdivision. This provision was included in petitioners' contract.

Pursuant to this understanding, petitioners, sometime after June 22, 1976, applied to Met-Ed for electric service. The rates governing the acquisition of electric

service, however, had been changed as of June 22, 1976, thereby substantially increasing the cost of obtaining service.

By complaint filed with the PUC, petitioners sought to have the rates existing prior to June 22, 1976 applied to their request for service. Petitioners argue that the letter of April 10, 1973 represents an agreement or contract that Met-Ed would provide service to the subdivision customers at the rates existing on April 10, 1973. This argument is without merit.

Even if this letter could be construed as petitioners contend, Section 303 of the Public Utility Law[1] provided, in part:

No public utility shall, directly or indirectly, by any device whatsoever, or in anywise, demand or receive from any person, corporation, or municipal corporation a *greater or less rate* for any service rendered or to be rendered by such public utility than that specified in the tariffs of such public utility applicable thereto. . . . (Emphasis added.)

Thus, any "contract" between Met-Ed and petitioners at rates different from those entered into with other consumers would be ineffective, since tariffs have the force of law. *Springfield Consolidated Water Co. v. Philadelphia,* 285 Pa. 172, 131 A. 716 (1926); *Stiteler v. Bell Telephone Co.,* 32 Pa. Commonwealth Ct. 319, 323, 379 A.2d 339, 341 (1977). As stated in *Scranton Electric Co. v. Avoca Borough School District,* 155 Pa. Superior Ct. 270, 274, 37 A.2d 725, 727 (1944),

---

[1] Act of May 28, 1937, P.L. 1053, *as amended, formerly* 66 P.S. §1143, repealed by Sec. 2(a) of the Act of July 1, 1978, P.L. 598, 66 Pa. C.S.A. Reps. A similar provision is now found in the Public Utility Code, 66 Pa. C.S. §1303.

Contracts for the service of utilities are presumed to have been made subject to the police power of the state . . . , and it is *beyond the power of the contracting parties to fix rates* or provide for service permanently. Plaintiff's established rates apply to defendant the same as to other consumers *notwithstanding the existence of any contract* providing for a different rate or for free service. . . . The principle has been definitely and repeatedly stated. The Public Service Company Law and the Public Utility Law *supplant any agreement in so far as rates are involved between the consumer and the utility.* (Citations omitted, emphasis added.)

Likewise without merit is petitioners' contention that the PUC erred in finding that petitioners had applied for service after June 22, 1976. Our review of the record indicates that there is substantial evidence to support this finding.

Mr. William Burgoon, a clerk in the line department, testified that petitioners' line extension request was made by phone to him on June 25, 1976 and that, if anyone had called Met-Ed earlier concerning a line extension, he would have known about it. There is ample evidence that Met-Ed took no action in regard to this request until after the application date of June 25. In addition, the application itself is dated June 25, 1976.

Accordingly, we enter the following

### Order

And Now, this 22nd day of October, 1979, the order of the Pennsylvania Public Utility Commission, dated June 8, 1978, adopting the decision of an administrative law judge which dismissed the complaint of Joseph Delph and Violet Delph, his wife, docketed at Complaint Docket No. 22029, is hereby affirmed.