Brockway Glass Company, Petitioner *v.* Pennsylvania Public Utility Commission, Respondent.

Argued September 14, 1981, before Judges Blatt, MacPhail and Palladino, sitting as a panel of three.

*Edward J. Riehl,* with him *Robert H. Griswold, McNees, Wallace & Nurick,* for petitioner.

*Kandace F. Foust,* Assistant Counsel, with her *Shirley Rae Don,* Deputy Chief Counsel and *Joseph J. Malatesta, Jr.,* Chief Counsel, for respondent.

*Edward S. Stiteler,* for Amicus Curiae, West Penn Power Company.

Opinion by Judge Blatt, December 16, 1981:

Brockway Glass Company (Brockway) appeals here from an order of the Pennsylvania Public Utility Commission (PUC) entered October 15, 1980, which adopted the Initial Decision and Ruling on Exceptions of the Administrative Law Judge (ALJ) and dismissed the petitioner's complaint against West Penn Power Company (West Penn). We affirm.

Brockway, an industrial customer of West Penn at several locations, has been taking electric service at its Plant No. 11 in Washington, Pennsylvania since acquisition of that plant in 1964, at which time it succeeded to the then-existing electric service agreement for that plant. Brockway and West Penn subsequently executed three new agreements: on October 10, 1965, September 8, 1967 and May 3, 1974, each of which was based upon a different West Penn rate schedule

chosen by Brockway with regard to its demand requirements at the time in question. The last agreement, dated May 3, 1974, was computed in accordance with Rate Schedule 47 and provided for 25,000 volt service to a maximum load of 10,000 kilowatts, and a minimum demand of 7,500 kilowatts. This agreement, as did Rate Schedule 47, provided for an initial agreement term of four years, subject to cancellation thereafter upon one-year's written notice by either party. On August 31, 1973 West Penn filed Rate Schedule 47 with the PUC as part of its tariff and refiled it on September 4, 1979.

On or about September 18, 1979,[1] Brockway notified West Penn that, due to the termination of operations at Plant No. 11 as of January 1, 1980, the power use at the plant would be drastically reduced and a transfer to a more appropriate rate was therefore requested as of that date. On January 3, 1980, Brockway confirmed the reduction in operations at the plant and again requested transfer to a more suitable rate. West Penn, considering itself bound by the one-year minimum notice provision of its filed tariff and, therefore, unable to effect a change in rate until September 18, 1980, continued to bill Brockway in accordance with Rate Schedule 47. Brockway, however, recomputed the billings for service provided it after January 1, 1980 pursuant to Rate Schedule 30, which it viewed as the rate most beneficial to it under its changed circumstances.

---

[1] The record indicates that Thomas L. Anderson, Jr., the author of the September 18, 1979 letter from Brockway, succeeded in recalling the letter from West Penn pending Brockway's public announcement on October 1, 1979 of its intention to terminate operations at Plant No. 11. Anderson, by letter of October 1, 1979, then reconfirmed Brockway's intention to shut down Plant No. 11 as of January 1, 1980. The Administrative Law Judge found September 18, 1979 to be the controlling date.

On February 22, 1980 Brockway filed a complaint with the PUC 1) seeking to have it find that the one-year notice of cancellation requirement in the contract and in Rate Schedule 47 was unjust, unreasonable and unlawful and would result in West Penn's collecting excessive charges from Brockway, and 2) seeking a determination of Brockway's right to have its billing computed under a more beneficial rate in light of the drastic reduction in its demand requirements. After a hearing, at which only Brockway offered evidence, the ALJ found that Brockway had failed to meet its burden of proof and dismissed the complaint. The initial decision was reaffirmed by the ALJ in his Ruling on Exceptions and both of these determinations by the ALJ were subsequently adopted as its action by the PUC. This appeal then followed.

Our scope of review in rate making cases is limited to a determination of whether or not constitutional rights have been violated, or if an error of law has been committed, or whether or not the findings, determinations or order of the PUC are supported by substantial evidence. *Zucker v. Pennsylvania Public Utility Commission*, 43 Pa. Commonwealth Ct. 207, 401 A.2d 1377 (1979).

Brockway contends that Section 1303 of the Public Utility Code (Code), 66 Pa. C. S. §1303, requires a customer, whose service requirements have changed subsequent to execution of a service agreement and who has given notice to the utility of the changed conditions, to have its future billings computed at the rate most advantageous to the customer's realigned service requirements. Brockway's reliance on this Section of the Code, however, is misplaced.

Section 1303 of the Code provides:

No public utility shall, directly or indirectly, by any device whatsoever, or in anywise, demand or receive from any person, corporation,

or municipal corporation a *greater or less rate* for any service rendered or to be rendered by such public utility than that specified in the tariffs of such public utility applicable thereto. The rates specified in such tariffs shall be the lawful rates of such public utility *until changed,* as provided in this part. Any public utility, having more than one rate applicable to service rendered to a patron, shall, after notice of service conditions, compute bills under the rate most advantageous to the patron. (Emphasis added.)

Tariffs, of course, can include schedules of rates, and all rules, regulations, practices or contracts involving rates and have the force of law and are binding on both the utility and its customer. *Behrend v. Bell Telephone Company,* 242 Pa. Superior Ct. 47, 363 A.2d 1152 (1976). And, in *Bell Telephone Co. v. Pennsylvania Public Utility Commission,* 53 Pa. Commonwealth Ct. 241, 244, 417 A.2d 827, 828-29 (1980), this Court construed Section 1303 of the Code and stated that "[t]here can be no lawful rate *except* the last tariff published as provided by law. . . . Further, it is well established that in the absence of an exception by the Commission, a public utility may not charge any rate for services other than that lawfully tariffed. . . ." (Citations omitted, emphasis in original.) It is well-settled in Pennsylvania that:

Contracts for the service of utilities are presumed to have been made subject to the police power of the state . . . , and it is *beyond the power of the contracting parties to fix rates* or provide for service permanently. . . . [T]he Public Utility Law *supplant[s] any agreement in so far as rates are involved between the consumer and the utility.* (Citations omitted, emphasis added.)

*Delph v. Pennsylvania Public Utility Commission*, 46 Pa. Commonwealth Ct. 552, 555, 406 A.2d 1209, 1210 (1979) (quoting *Scranton Electric Co. v. Avoca Borough School District*, 155 Pa. Superior Ct. 270, 274, 37 A.2d 725, 727 (1944)). West Penn, therefore, was required to impose the 1979 tariff then in effect, *Bell Telephone*, and any attempt by it to vary the terms of the tariff either as to rate or notice requirements would have been ineffective. *Delph.* West Penn, moreover, was not free to enter into a contract with Brockway which differed from the tariff filed with the PUC; it was constrained to charge the lawful rate until expiration of the one-year notice period, as tariffed.

Brockway asserts that the requirement of a one-year notice of cancellation in addition to a four-year initial term of service operated as an unlawful penalty, and, further, that the said requirement was a term of adhesion. Public utility rates, of course, are required to be just and reasonable, 66 Pa. C. S. §1301, and, where a customer is heard to complain concerning a *proposed* change in rate, the burden of proof is upon the public utility to show that the proposed rate is just and reasonable. Where the complaint involves an *existing* rate, however, the burden then falls upon the customer to prove that the charge is no longer reasonable. *Zucker.* Brockway did not meet its burden here. The record indicates that in each of its successive agreements Brockway obtained a new and different rate schedule which was economically compatible with its then-current electric service requirements. In 1974 it opted for Rate Schedule 47 with its one-year notice of cancellation provision to apply after expiration of the intial four-year term and it continued under that schedule without complaint until it curtailed its operations at Plant No. 11 in 1980. Brockway submitted virtually no evidence at the hearing as to the unreasonableness of the cancellation provision per se, but ad-

dressed itself, from the position of hindsight, primarily to the unreasonableness of the provision as *now* applied to Brockway. Indeed, Brockway did not complain of any unreasonableness until such time as Rate Schedule 47 became financially disadvantageous to it.

Tariff limitations have been upheld by our courts, which have recognized "the power vested in the PUC to evaluate the reasonableness of tariffs or regulations filed with it and to determine whether the provisions therein are compatible with the code and policies of the commission and consistent with its regulatory scheme." *Behrend,* 242 Pa. Superior Ct. at 74-75, 363 A.2d at 1166. Rate Schedule 47 had met the test of reasonableness at rate proceedings on at least two previous occasions when it had been submitted by West Penn as a proposed rate, and Brockway has now failed to meet its burden of demonstrating that Rate Schedule 47 is now unreasonable.

Brockway does contend, and rightly, that the PUC was incorrect when it stated that "[w]here there is an outstanding contract, based on reasonable tariff provisions, it is the time of the *contract* that governs the application of Section 1303, and *not* the time of *use.*" (Emphasis in original.)[2] We have previously held that the rate in effect at the time of delivery of service, rather than the rate at the time of contracting is controlling, because, "[t]here can be no lawful rate *except* the last tariff published as provided by law." *Bell Telephone,* 53 Pa. Commonwealth Ct. at 244, 417 A.2d at 828 (emphasis in original). We must conclude here, however, that the PUC's misstatement of the law in this adjudication is harmless error, for Rate Schedule 47, as part of the last published tariff, *was* the tariff in effect at the time of *use* as well as at the time of contracting and was, therefore, the controlling lawful rate.

---

[2] Reproduced Record at p. 112a.

245

For the foregoing reasons, we must affirm the order of the PUC.

## ORDER

AND Now, this 16th day of December, 1981, the order of the Pennsylvania Public Utility Commission in the above-captioned matter is affirmed.

Judge MENCER did not participate in the decision in this case.