531 A.2d 881

Leonard M. Strunk, Petitioner *v.* Pennsylvania Public Utility Commission, Respondent.

Submitted on briefs June 12, 1987, to Judges CRAIG and PALLADINO, and Senior Judge BARBIERI, sitting as a panel of three.

*Leonard M. Strunk,* petitioner, for himself.

*Terryl A. Moreland,* Assistant Counsel, with him, *Daniel P. Delaney,* Chief Counsel, for respondent.

*William M. Posner,* for intervenor, The Bell Telephone Company of Pennsylvania.

OPINION BY JUDGE CRAIG, October 2, 1987:

Petitioner Leonard M. Strunk, a customer of intervenor Bell Telephone Company of Pennsylvania (Bell), appeals from an order of the Public Utility Commission (PUC) adopting an Administrative Law Judge's (ALJ's) Initial Decision dismissing petitioner's formal complaint against Bell.

At issue is the validity of Bell's transmission function charge, imposed in addition to other charges for foreign exchange telephone service.

Petitioner resides in East Fallowfield Township which, for the purpose of receiving telephone service from Bell, is located in Bell's Coatesville exchange area. Bell assigns either a 383 or 384 prefix to telephone numbers within the Coatesville exchange area. However, in 1977, petitioner obtained from Bell a 363 Exton exchange area prefix, which is foreign to petitioner's calling area, that permitted petitioner to have metropolitan area flat rate service[1] to Philadelphia, a service Bell does not offer in its Coatesville exchange area.

---

[1] Metropolitan Area Flat Rate Service is an optional service available only to residential customers located within the Philadel-

Before May 1984, Bell billed petitioner $60.50 monthly and petitioner paid that amount for his telephone service. Those bills indicated that the $60.50 covered his telephone service and equipment. However, in May 1984, petitioner received a letter from Bell advising him that, because of a coding error by Bell, Bell had been underbilling him $32 per month for his foreign exchange telephone service by failing to include a transmission function[2] charge in his phone bill.

Petitioner responded to Bell's letter by refusing to pay the transmission function charge and filing a complaint with the commission (1) to prohibit Bell from disconnecting his service for nonpayment of that charge and (2) to order Bell to remove such extra charge from his bill. Specifically, petitioner argued there, as he does here, that the transmission function charge is included in the $60.50 charge related to Bell's charge for service and equipment and that Bell is attempting to charge him for it twice by making it a separate billing item on his bill. In the alternative, he contends that the transmission function charge is unreasonable. We cannot agree.

The setting of rates is an administrative function of the PUC and our scope of review in complaint proceedings is restricted to a determination of whether constitutional rights were violated, errors of law committed, or necessary findings of fact made without the support

---

phia or Philadelphia suburban exchange, or the first tier of exchanges immediately adjacent to a Philadelphia suburban exchange, and permits subscribers unlimited toll-free calls within the Philadelphia area.

[2] The transmission function is equipment required to assure that, once the interexchange channel is connected, conversation between two points will be transmitted adequately. The transmission function charge is an additional charge at each end of the interexchange channel.

of substantial evidence. *Peoples Natural Gas Co. v. Pennsylvania Public Utility Commission,* 47 Pa. Commonwealth Ct. 512, 409 A.2d 446 (1979). Furthermore, where, as here, the complaint concerns an existing rate, the petitioner must prove the charge is no longer reasonable. *Brockway Glass Co. v. Pennsylvania Public Utility Commission,* 63 Pa. Commonwealth Ct. 238, 437 A.2d 1067 (1981).

Before the ALJ, Bell managers testified that foreign exchange telephone service is telephone service supplied from an exchange outside subscriber's normal exchange area. Bell's handbook defines it as "[a] service providing a circuit connecting a subscriber's main station or private branch exchange with a central office or exchange other than that which normally serves the exchange area in which the subscriber is located."

Here the record clearly shows that, although the petitioner resided in the Coatesville exchange area, he had an Exton exchange that permitted him to make unlimited toll-free calls to Philadelphia, a service not normally available to Coatesville subscribers. Thus, petitioner's use of the Exton 363 exchange number in Coatesville to receive metropolitan flat rate service constituted foreign exchange service.

To provide petitioner with foreign exchange service, Bell ran what is known as an interexchange channel, or a foreign exchange line, that connected its Coatesville central office with its Exton central office. To that line the metropolitan flat rate service option was attached. The monthly charge to the petitioner for the interexchange channel, which was based on the aerial distance of eleven miles between the Coatesville and Exton central office, is $60.50 and breaks down as follows: (1) $10.50 for the first mile; (2) $6.50 for each of the next four miles; and (3) $4.00 for each of the final six miles.

Bell's witnesses produced Tariff 1819, which became effective in September 1982, to show when the formula for determining the cost of the interexchange channel became effective, and Tariff 2316, which became effective December 30, 1983, and was in effect when petitioner filed his complaint, to show that the rate had not changed. Those tariffs also show that a transmission function charge of $29 should have been billed to petitioner under Tariff 1819 and it should have been raised to $32 under Tariff 2316. However, before May 1984, Bell never billed petitioner for the transmission function component of his telephone service.

Bell's failure to bill petitioner correctly did not vest petitioner with any right to continued underbilling after Bell discovered its mistake. Instead, Bell was legally obligated to bill petitioner consistent with its latest tariff. Tariffs are binding contracts on the utility and the customer, and there is no lawful rate contrary to the last tariff published as provided by law. *Brockway.*

Petitioner has not proved that any of the charges relating to his telephone service are unreasonable.

Finally, in his petition for review to this court, petitioner raised questions concerning the wording of Bell's bills and contracts with their customers. Those issues were not raised before the PUC, and cannot be considered by this court.

Accordingly, we affirm the decision of the PUC.

### Order

Now, October 2, 1987, the order of the Pennsylvania Public Utility Commission entered July 29, 1986, at C-844285, dismissing the complaint of Leonard M. Strunk, is hereby affirmed.