**PENNSYLVANIA ELECTRIC COMPANY, Petitioner,**

v.

**PENNSYLVANIA PUBLIC UTILITY COMMISSION, Respondent.**

Commonwealth Court of Pennsylvania.

Argued April 7, 1995.
Decided Aug. 1, 1995.

**282**

Jeffrey A. Franklin, for petitioner.

Susan D. Colwell, for respondent.

David M. Kleppinger, for intervenor, Lewistown Specialty Yarns, Inc.

Before SMITH and FRIEDMAN, JJ., and KELTON, Senior Judge.

KELTON, Senior Judge.

The Pennsylvania Electric Company (Penelec) petitions for review of the May 24, 1994 decision of the Public Utility Commission (the Commission) in which the Commission granted a tariff waiver to Lewistown Specialty Yarns, Inc. (Lewistown).

■ The principal issue before us is whether, under the Public Utility Code,[1] the Commission exceeded its authority in granting a customer, Lewistown, a waiver of the eligibility requirements of a more advantageous tariff rate, in the absence of any finding that the relevant tariff rate is unjust, unreasonable or discriminatory.[2] We conclude that the Commission lacked the authority to require Penelec, by the grant of a

waiver, to provide service to Lewistown under a more advantageous rate, for which Lewistown does not otherwise qualify. However, because the Commission, in granting a waiver, did not address Lewistown's claim that the relevant rate is unjust, unreasonable, and discriminatory, we vacate and remand this case for further proceedings.

## Background

Lewistown, a Penelec customer, conducts an electricity-intensive process for the manufacture of polyester yarns. Lewistown filed a Formal Complaint against Penelec alleging that Penelec was charging Lewistown an unjust, disadvantageous, and discriminatory rate in violation of Sections 1301, 1303, and 1304 of the Public Utility Code.[3] At the time, Lewistown was receiving electricity under Penelec's General Primary (GP) rate classification. Lewistown averred that Penelec violated Section 1303 by failing to charge Lewistown under Penelec's Large Primary (LP) classification, the most advantageous rate. Lewistown's claim was premised on Penelec's alleged refusal to sell, at a fair price, a substation that would enable Lewistown to qualify for electric service under Rate LP.[4] Additionally, Lewistown averred

1. 66 Pa.C.S. §§ 101–3315.

2. Our scope of review of the Commission's order is limited to determining whether constitutional rights have been violated, an error of law has been committed or whether the Commission's findings are supported by substantial evidence. *West Penn Power Co. v. Pennsylvania Public Utility Commission*, 134 Pa.Commonwealth Ct. 53, 578 A.2d 75 (1990), *petition for allowance of appeal denied*, 527 Pa. 660, 593 A.2d 429 (1991).

3. The Sections of the Code relevant to Lewistown's complaint provide as follows. Section 1301, relating to just and reasonable rates, provides, in pertinent part, "[e]very rate made, demanded, or received by any public utility, ..., shall be just and reasonable, and in conformity with regulations or orders of the commission...." 66 Pa.C.S. § 1301. Section 1303, relating to application of the most advantageous rate, provides:

> No public utility shall, directly or indirectly, by any device whatsoever, or in anywise, demand or receive from any person, corporation, or *municipal corporation a greater or less rate* for any service rendered or to be rendered by such public utility than that specified in the tariffs of such public utility applicable thereto.

The rates specified in such tariffs shall be the lawful rates of such public utility until changed, as provided in the part. Any public utility, having more than one rate applicable to service rendered to a patron, shall, after notice of service conditions, compute bills under the rate most advantageous to the patron.
66 Pa.C.S. § 1303. Additionally, Section 1304, relating to discrimination in rates, provides, in pertinent part:

> No public utility shall, as to rates, make or grant any unreasonable preference or advantage to any person, corporation, or municipal corporation, or subject any person, corporation, or municipal corporation to any unreasonable prejudice or disadvantage. No public utility shall establish or maintain any unreasonable difference as to rates, either as between localities or as between classes of service....
66 Pa.C.S. § 1304.

4. As found by the ALJ in her April 30, 1993 Recommended Decision, Lewistown has a billing demand/load of 8,000 watts and accepts a delivery voltage of 12,470. (Finding of Fact No. 5.) Lewistown requires at least two transformations to reach its delivery voltage of 12,470. (Finding

that application of Rate GP to Lewistown subjects it to unreasonable prejudice or disadvantage in violation of Section 1304. Specifically, Lewistown alleged that its energy use is over ten times the average use of other Rate GP customers and approximately equal to the use of the average Rate LP customer. Therefore, Lewistown alleged that it has overpaid Penelec by about $200,000.00 per year.

The Administrative Law Judge (ALJ) issued, on April 30, 1993, a Recommended Decision denying the Complaint. The ALJ determined that Lewistown does not qualify for Rate LP and that the Commission lacks the authority to require Penelec to sell the substation to Lewistown. Therefore, the ALJ concluded that Lewistown had not proven that Penelec violated Section 1303 by failing to compute Lewistown's bills under Rate LP. Additionally, the ALJ concluded that Lewistown had failed to show that Penelec is charging unjust and discriminatory rates under Sections 1301 and 1304. Lewistown filed Exceptions to the Recommended Decision and Penelec filed Reply Exceptions.

The Commission issued a December 10, 1993 Opinion and Tentative Order, adopting the ALJ's findings of fact, but modifying the ALJ's Recommended Decision to grant a tariff waiver to Lewistown for service under the LP rate schedule. In its Opinion and Tentative Order, the Commission noted that Lewistown's usage demands and load profile more closely resemble those of a Rate LP customer than those of a Rate GP customer. Specifically, the Commission noted that Lewistown's annual Kwh energy consumption is nearly fifteen times greater than Penelec's average Rate GP customer and greater than the average Rate LP customer. The Commission determined that if Penelec were to lease or sell the substation to Lewistown, Lewistown would qualify for Rate LP.

The Commission held, however, that it was without authority to require Penelec to sell or lease its substation to Lewistown. Citing *Brockway Glass Co. v. Pennsylvania Public Utility Commission,* 63 Pa.Commonwealth Ct. 238, 437 A.2d 1067 (1981) and *Re West Penn Power Co.,* 63 Pa.P.U.C. 557 (1987), the Commission determined, however, that it has the power to grant a tariff waiver where it is not inconsistent with its regulations or policies and is in the public interest. The Commission then determined that Penelec's refusal to cooperate with Lewistown to negotiate the sale or lease of the substation justified the grant of a waiver. The Commission thus granted Lewistown a waiver of the voltage level delivery requirement set forth in Rate LP in order to remove any impediment to Lewistown's qualification for Rate LP. The Commission's rationale had not been advanced by either party; therefore, the Commission made the order tentative to allow the parties to submit exceptions.

Both Penelec and Lewistown filed exceptions to the Tentative Order. By order of May 24, 1994, the Commission determined that it had properly exercised its discretion in granting the tariff waiver but modified its Tentative Order to limit the waiver to a period of five years. The Commission stated that five years would allow Lewistown sufficient opportunity to review the economics of purchasing or leasing the necessary equipment to qualify for service under Rate LP.

Penelec appeals to this Court, arguing that, under *Brockway,* the Commission lacked the authority to grant a tariff waiver without a finding that the applicable tariff is unlawful; that the Commission failed to give Penelec a meaningful opportunity to challenge the Commission's decision; and that the Commission's decision is not supported by substantial evidence. Because we conclude that the Commission exceeded its authority in granting the tariff waiver to Lewistown, we do not discuss the remaining issues, relating to the waiver issue, raised by Penelec.

of Fact No. 6.) Penelec's existing tariff states that Rate LP is available only to a customer with a billing demand/load of 3,000 or more kilowatts and which accepts either a delivery voltage of 23,000 or a delivery voltage of less than 23,000 through a single transformation. (Finding of Fact No. 4.) Lewistown, therefore, does not qualify for Rate LP because it neither receives a delivery of 23,000 volts nor receives a delivery of less than 23,000 volts through a single transformation. According to Lewistown, if Penelec sold or leased the substation to Lewistown, Lewistown would acquire the necessary transformation equipment in order to qualify for Rate LP.

## Discussion

■ The Public Utility Code requires every public utility to file with the Commission tariffs showing all schedules of rates within the jurisdiction of the Commission. 66 Pa. C.S. § 1302. A tariff can include all schedules of rates and all rules, regulations, practices, or contracts involving any rate or rates. 66 Pa.C.S. § 102; *Brockway.* Tariffs have the force of law and are binding on both the utility and the customer. *Brockway.*

■ The Code contains no specific statutory authority for a tariff waiver as granted by the Commission. Section 1309 of the Code requires the Commission, upon a finding that the existing rates of any public utility for any service are unjust, unreasonable or in violation of any provision of law, to determine just and reasonable rates after reasonable notice and hearing, upon its own motion or complaint.[5] Although unique circumstances may warrant a separate rate for a customer, *see, e.g., Riverton Consolidated Water Co. v. Pennsylvania Public Utility Commission,* 186 Pa.Superior Ct. 1, 140 A.2d 114 (1958), the Commission did not establish a separate rate for Lewistown but granted it a waiver of existing rate eligibility requirements.

■ Additionally, where a utility has more than one rate applicable to a customer, Section 1303 of the Code requires the utility to compute its bills under the rate most advantageous to the customer. 66 Pa.C.S. § 1303. However, there can be no lawful rate except the last tariff published. *Brockway.* Here, under the effective tariff, Lewistown did not qualify for the more advantageous Rate LP, absent the waiver.[6]

Although our review of the Code reveals no express statutory support for the Commission's action, we do discern limited recognition, under Pennsylvania case law, of the Commission's power to grant a waiver under certain circumstances.

In *Brockway,* a customer sought to transfer to a more suitable rate when it experienced a drastic reduction in its power use. The rate, however, under which the customer had been receiving service, required one year notice of cancellation. The utility considered itself bound by the one-year notice requirement. The customer, therefore, filed a complaint seeking 1) a determination that the one-year notice requirement was unlawful; and 2) that the customer was entitled to have its billing computed under a more beneficial rate due to the reduction in its demand requirements. We affirmed the dismissal of the complaint.

In reaching our conclusion, we held that the customer was not entitled to a more advantageous rate because the utility was required to impose the tariff then in effect. We also determined that the customer had failed to establish the unreasonableness of the cancellation provision. Therefore, we concluded that the utility was constrained to charge the lawful rate until expiration of the one-year cancellation period, as tariffed.

Although we did not specifically discuss waiver in *Brockway,* we noted that "it is well established that *in the absence of an exception by the Commission,* a *public utility* may not charge any rate for services other than that lawfully tariffed." 63 Pa.Commonwealth Ct. at 241, 437 A.2d at 1070 (emphasis add-

---

**5.** Specifically, Section 1309 provides, in pertinent part:

Whenever the commission, after reasonable notice and hearing, upon its own motion or upon complaint, finds that the existing rates of any public utility for any service are unjust, unreasonable, or in anywise in violation of any provision of law, the commission shall determine the just and reasonable rates, including maximum or minimum rates, to be thereafter observed and in force, and shall fix the same by order to be served upon the public utility, and such rates shall constitute the legal rates of the public utility until changed as provided in this part....

66 Pa.C.S. § 1309.

**6.** We disagree with the Commission that its action is authorized by Section 508 of the Code, 66 Pa.C.S. § 508, relating to contract modification. Section 508 empowers the Commission to vary, upon a fair, reasonable, and equitable basis, the terms of any contract between a utility and a customer, which embrace or concern a public interest. The corollary to Section 508 is that a utility cannot divest the Commission of its power to regulate rates by the terms of a private contract. *See Lackawaxen Water & Sewer Co. v. Pennsylvania Public Utility Commission,* 85 Pa.Commonwealth Ct. 377, 481 A.2d 1386 (1984). Here, the Commission did not modify a private contract but Penelec's lawfully tariffed rate schedule.

ed).[7] Thus, in *West Penn*, the Commission approved a joint application for a temporary waiver of the demand provisions of the utility's tariff. The waiver was mutually negotiated by the customer and the utility for consideration. Although we do not, here, rule on the validity of the Commission's action in *West Penn*, we believe that the approval of a mutually negotiated tariff waiver is arguably within the meaning of an "exception by the Commission" as contemplated in *Brockway*.

The case before us does not, however, involve a mutually negotiated waiver. The public utility, Penelec, is not seeking to charge a rate other than that lawfully tariffed. Rather, Lewistown, like the customer in *Brockway*, is unilaterally seeking application of a more advantageous rate for which it does not otherwise qualify. Here, the Commission granted Lewistown a tariff waiver merely because Lewistown resembles a Rate LP customer (without finding that application of Rate GP to Lewistown is unjust or discriminatory) and because Penelec allegedly refused to cooperate in the sale of its substation to Lewistown (even though Penelec was under no duty to do so). In contrast, despite the customer's drastically changed circumstances in *Brockway*, we held that the customer was bound by the one-year cancellation provision. We conclude that the Commission's action in this case is inconsistent with our holding in *Brockway*.

Accordingly, because we conclude that the Commission's action is neither authorized by statute nor case law, we hold that the Commission exceeded its authority in granting Lewistown a tariff waiver. In reaching its decision based solely on the waiver rationale, however, the Commission failed to rule on Lewistown's claims that Rate GP, as applied to Lewistown, is unjust, unreasonable, and discriminatory.[8] In the event that Lewistown demonstrates the unlawfulness of the rate, the Commission is required to fix, pursuant to Section 1309, just and reasonable rates, which would be applicable to Lewistown and to any other present or future customers similarly situated. Therefore, we vacate the order of the Commission and remand this case to the Commission for findings of fact and conclusions of law consistent with this opinion.

## ORDER

**AND NOW,** this 1st day of August, 1995, we hereby vacate the order of the Public Utility Commission dated May 24, 1994 and remand this matter for further proceedings consistent with this opinion.

Jurisdiction relinquished.

---

7. We note that the cases cited in support of this proposition relate to the Commission's power to fix rates regardless of private contracts.

8. When a customer challenges an existing rate, the customer bears the burden of proving that the rate is unlawful. *Brockway.* The ALJ's con-

clusion of law was that Lewistown had not proven that the Rate GP is unreasonable, unjust, or discriminatory. Although the Commission did not reverse the ALJ's findings of fact and conclusions of law, it did not specifically review this issue.