Chester W. Stiteler, Petitioner *v.* The Bell Telephone Company of Pennsylvania and The Pennsylvania Public Utility Commission, Respondents.

Submitted on briefs, September 16, 1977, to President Judge Bowman and Judges Mencer and Blatt, sitting as a panel of three.

*Mark B. Aronson,* with him *Behrend and Aronson,* for petitioner.

*Donald F. Clarke,* with him *Sheldon Seligsohn* and *W. Preston Granbery,* for respondent, The Bell Telephone Company of Pennsylvania.

*Barnett Satinsky,* Chief Counsel, with him *Shirley Rae Don,* Assistant Counsel, and *Paul E. Russell,* Assistant Counsel, for respondent, Pennsylvania Public Utility Commission.

OPINION BY PRESIDENT JUDGE BOWMAN, November 4, 1977:

Before us is a petition for review in the nature of an appeal from an order of the Public Utility Commission (PUC) dismissing Chester W. Stiteler's (Stiteler) complaint against The Bell Telephone Company of Pennsylvania (Bell). The PUC order was entered on September 20, 1976.

The history of a dispute between Stiteler and Bell leading to the PUC order reveals the following. Stiteler alleges that on July 23, 1974, Bell, without any right-of-way or easement, trespassed upon his land to lay a telephone cable. In the process of placing the cable, Bell allegedly caused substantial damage to his property. Stiteler presently has a claim pending against Bell for recovery of these damages and contends that Bell has steadfastly refused to negotiate in good faith a settlement of this claim.

In November of 1974 Stiteler refused to pay his telephone bill and continued to refuse to pay that bill and all subsequent bills submitted by Bell for telephone service. Bell gave Stiteler repeated notice that the service would be terminated if the delinquent bills

were not paid. Finally, on April 8, 1975, Bell terminated Stiteler's telephone service. At the time of termination, Stiteler's unpaid bill for the telephone service rendered by Bell was $113.30.

Stiteler alleges, as justification for nonpayment of this bill, that Bell trespassed on his property causing damages far in excess of the $113.30 that he owes Bell. He makes no claim that his telephone service was inadequate or that the bills rendered were inaccurate. In an effort to have his services restored, Stiteler filed a complaint before the PUC requesting the PUC to order Bell to return service to his residence. At the hearing before the PUC examiner Stiteler offered to establish an escrow account for payment of renewed telephone service and all outstanding monies owed Bell, pending the outcome of Stiteler's lawsuit against Bell. Bell refused this offer contending that its acceptance would result in an unlawful preferential treatment and a denial to Bell of monies to which it is legally entitled.

The PUC dismissed Stiteler's complaint stating that Bell could legally terminate service for nonpayment under its filed and effective tariff. This appeal followed. The tariff, Pa. P.U.C. No. 1, Section 1, paragraph 12, provides:

SUSPENSION, TERMINATION OR REFUSAL OF SERVICE

In the event of the abandonment of this service, the non-payment of any sum due, the failure to make a deposit as security for the payment of future bills for service when required, or any other violation by the customer of the terms and conditions under which service is furnished, the Telephone Company may, by notice in writing to the customer, suspend any or all services furnished to the customer until all charges applicable to the time of the restora-

tion of service, including the regular monthly rate for cable to the time of the restoration of service during the period of partial or complete suspension for non-payment, and including any taxes which are imposed on the customer and are required to be paid or prepaid by the Telephone Company, have been paid and all violations have ceased, or the Telephone Company may terminate any and all services without suspension of service or following suspension, and sever the connection and remove its equipment from the customer's premises.

Several sections of the Public Utility Law (Act), Act of May 28, 1937, P.L. 1053, *as amended*, 66 P.S. §1101 et seq., recognize the right of a public utility to terminate service to a customer who fails to pay an undisputed bill for telephone service supplied. Section 202, 66 P.S. §1122, provides:

> Upon the application of any public utility and the approval of such application by the commission, evidenced by its certificate of public convenience first had and obtained, and upon compliance with existing laws, and not otherwise, it shall be lawful:
>
> . . . .
>
> (b) For any public utility to abandon or surrender, in whole or in part, any service: Provided, That *the provisions of this paragraph shall not apply to discontinuance of service to a patron for nonpayment of a bill*, or upon request of a patron. (Emphasis added.)

In effect, Section 202 of the Act states that no public utility is required to obtain a certificate of public convenience from the Commission before the utility terminates service for nonpayment of a bill.

Section 402.1 of the Act, 66 P.S. §1172.1, which sets forth the days upon which discontinuance of utility

service is prohibited, specifically recognizes the right of public utilities to terminate service for nonpayment of charges:

> [T]he commission shall not authorize *such a public utility to discontinue,* except upon request of the customer, *for nonpayment of charges* or for any other reason, the rendering of service during the following periods. . . . (Emphasis added.)

The right of the public utility to terminate service for nonpayment has similarly been upheld by the PUC in a number of cases. *Griffin v. Bell Telephone Co. of Pennsylvania,* 42 Pa. P.U.C. 22 (1965); *Galloway v. Bell Telephone Co. of Pennsylvania,* 44 Pa. P.U.C. 282 (1969).

Section 401 of the Act, 66 P.S. §1171, authorizes public utilities to adopt service rules and regulations. The rules and regulations relating to rates are known as tariffs. Section 302 of the Act, 66 P.S. §1142, and Section 2(19), 66 P.S. §1102(19), require public utilities to file with the PUC all tariff rules and regulations providing for the termination of service for nonpayment of charges. Tariffs filed with a state regulatory agency, such as the PUC, are not mere contracts but have the force of law and are binding on the consumer and the utility. *Behrend v. The Bell Telephone Company,* 242 Pa. Superior Ct. 47, 363 A. 2d 1152 (1976).

Pursuant to Sections 302 and 401 of the Act, Bell has filed Rule 12 which provides for termination of service in the event of nonpayment of any sum due. Stiteler does not allege that this tariff provision is invalid or ineffective. Since the tariff has the force of law and does not involve the consent of the subscriber, it is immaterial that Stiteler and Bell did not have a formal contract. *See Scranton Electric Co. v.*

*Avoca Borough School District,* 155 Pa. Superior Ct. 270, 37 A.2d 725 (1944).

Stiteler's attempt to set up an escrow account for payment of the delinquent bills and future bills is not performance sufficient to establish grounds for compelling Bell to provide service to Stiteler. Sections 303 and 304 of the Act, 66 P.S. §§1143-44, state that the public utility must adhere to its tariffs and that there can be no discrimination against or preference among its customers.

Stiteler states that Bell should not be permitted to terminate service because Bell is indebted to Stiteler for a sum greater than the amount of his delinquent bill. Bell vigorously denies any indebtedness for the alleged trespass. Stiteler's claim against Bell is unliquidated, disputed and unadjusted. Clearly, under the Bell tariff, Rule 12, there is no prohibition of termination of service for nonpayment of a bill when there is an unrelated tort claim present.

We may not disturb an order of the PUC absent a violation of constitutional rights, an error of law, or lack of substantial evidence to support the PUC's findings, determination or order. *Johnstown-Pittsburgh Express, Inc. v. Public Utility Commission,* 5 Pa. Commonwealth Ct. 521, 291 A.2d 545. (1972).[1] We have applied this standard of review to the instant case and we conclude there are no infirmities in the PUC decision which would permit us to disturb its order. We affirm.

---

[1] The appellate scope of review regarding PUC cases was formerly found under Section 1107 of the Act, 66 P.S. §1437. This section was repealed by the Act of October 7, 1976, P.L. 1057, No. 215, §20. Prior to its repeal, however, Section 1107 was superseded by Pa. R.A.P. 5105(c), while Pa. R.A.P. 1551(b) simultaneously adopted, in our view, the scope of review as it existed under Section 1107 and the case law.

AND Now, this 4th day of November, 1977, the Order of the Pennsylvania Public Utility Commission is affirmed.