## CIRCUIT COURT OF ROCKINGHAM COUNTY

Wampler Foods, Inc.

City of Harrisonburg

June 3, 1999

Case No. (Law) 10918

BY JUDGE JOHN J. MCGRATH, JR.

### I. *Facts*

On March 4, 1997, the Plaintiff filed a two-count Motion for Judgment sounding in tort and breach of contract alleging that it had suffered economic and property damage as a result of an October 9, 1995, fire in three 250KVA transformers which interrupted electric service to the Plaintiff's factory. On October 15, 1997, this Court sustained the Defendant's Demurrer to the negligence count of the complaint on the grounds that the Plaintiff had failed to give notice to the Defendant pursuant to the terms of § 8.01-222 of the Code of Virginia, 1950, as amended. See *Wampler Foods, Inc. v. City of Harrisonburg*, 43 Va. Cir. 415 (Rockingham County 1997).

The parties then proceeded with discovery, and at the completion of discovery, the Defendant has now filed a Motion for Summary Judgment on the remaining contract claim. The basis of Defendant's Motion for Summary Judgment is that Harrisonburg, Virginia's Schedule of Rules and Regulations which govern the operation of the Harrisonburg Electric Commission provide in pertinent part as follows:

The following schedule of rules and regulations will apply to all purchase of electrical service hereinafter called the "customer" from the Harrisonburg Electrical Commission, Harrisonburg, Virginia, hereinafter called the "distributor" ... .

> 18. INTERRUPTION OF SERVICE: The distributor will use reasonable diligence to provide a regular and uninterrupted supply of electricity, but in case the supply should be interrupted for any cause, the distributor shall not be liable for damages resulting therefrom ... .

The Defendant's argument is that the City was vested by the General Assembly with the authority to operate an electric plant and to establish the terms and conditions of electrical service. Virginia Code § 15.1-877, repealed by Acts 1997, Ch. 587, effective December 1, 1997 (Municipal corporations may operate electrical plants and may contract with others for such purposes and services). The purpose for which these powers were conferred was to "secure, preserve, and promote health, safety, welfare, comfort, convenience, trade, commerce, and industry in the municipality and among the inhabitants thereof ... ." Virginia Code § 15.1-873, repealed by Acts 1997, Ch. 587 effective December 1, 1997.

The City further argues that with the authority granted by the General Assembly, HEC was established in 1973 by public referendum and ordinance of the City. Virginia Code § 15.1-292, now Virginia Code § 15.2-2109; Harrisonburg City Code § 8-1-1. In creating HEC, the City delegated the power to "make all contracts and do any and all acts and things that are necessary, convenient, or desirable in order to operate, maintain, enlarge, expand, and promote an orderly economic, and businesslike administration of the [electric] system." Harrisonburg City Code § 8-1-8. The City also vested HEC with the power to "fix the rates to be charged for electricity and for services rendered by the electric department." Harrisonburg City Code § 8-1-9.

The City argues that as part of the authority granted to HEC by the City and the General Assembly, it fixes rates and sets the terms and conditions for the provision of electric service. The terms and conditions are set forth in the Schedule, which is available for public inspection at HEC's offices. (Schedule at ¶ 25.) Neither the General Assembly nor the City require that the rates and terms and conditions be filed with the State Corporation Commission or any other entity to be effective. The City argues that the Schedule was lawfully promulgated by HEC pursuant to the authority granted to it by the City and the General Assembly and that the Schedule, including the limitation of liability contained in Paragraph 18, has the force and effect of law.

The City takes the position that because the Schedule has the force of law, it is part of all contracts between HEC and its customers, including Wampler, and controls the parties' respective obligations. See *Ambrose v. Acacia Mut. Life Ins. Co.*, 190 Va. 189, 196, 56 S.E.2d 372, 276 (1949) (pertinent statutes

are read into and deemed parts of the contract of insurance as though they were actually set forth therein), and that it is immaterial that no written contract between Wampler and HEC was executed. *Stiteler v. Bell Tel. Co.*, 379 A.2d 339, 341 (Pa. Cmwlth. 1977). In fact, the Schedule itself provides that it is part of *all* contracts for electric service and applies to *all* purchasers of electric service, whether or not a written agreement for electric service is executed. (Schedule at ¶¶ 1, 26.)

The Plaintiff, on the other hand, asserts that although this appears to be a case of first impression in the Commonwealth, it is indisputable that under the Supreme Court's holding of *Richardson-Wayland Elec. Co-Op v. Virginia Elec. & Power Co.*, 219 Va. 198 (1978), Paragraph 18 of the Harrisonburg Rates and Schedules is an invalid attempt by the City to isolate itself against liability for breach of a public duty. Also, Plaintiff argues that even assuming *arguendo* if Paragraph 18 were valid under the law of Virginia, it is ambiguous and should be construed strictly against the Defendant.

In order to determine whether the Supreme Court's holding in *Richardson-Wayland Elec. Co-Op v. Virginia Elec. & Power Co.*, 219 Va. 198 (1978), prevents a public utility which is owned by a municipality from contractually limiting its liability for interruption of service, a close analysis of the Supreme Court's reasoning in the *Richardson-Wayland* case is required.

In *Richardson-Wayland, supra*, the underlying cause of complaint was a fire that occurred in the original plaintiff's home and which was allegedly caused by the negligent installation by VEPCO and Richardson-Wayland of electric power lines into the home. The case was settled by paying the original plaintiffs $70,000.00, contributed one-half by VEPCO and one-half by Richardson-Wayland. It was stipulated at that point in the case that the trial court would consider the matter of the validity of the indemnity agreement "as though a jury verdict had been returned jointly against both defendants for their 'active' and 'joint' negligence in causing the Taylor fire." *Id.* at 199.

It must be noted that in *Richardson-Wayland*, the Court banned a utility from contractually isolating itself from its own acts of negligence when the injury is caused by the *negligent supply* of electricity to customers.

What is manifestly clear after the Supreme Court's decisions in *Johnson v. Richmond & Danville RR.*, 86 Va. 975 (1890); *Richardson-Wayland Elec. Co-Op v. Virginia Elec. & Power Co.*, 219 Va. 198 (1978); and *Hiett v. Lake Barcroft Community Assn., Inc.*, 244 Va. 191 (1992), is that a party cannot isolate itself from acts of its own negligence by contract. However, there are two reasons that the instant case is not governed by this principle.

First, the limitation which is imposed by Section 18 of Harrisonburg Electric Commission's Rules and Regulations is to insulate the City from

liability for the interruption of the supply of electric current "for any cause." In no way does Clause 18 excuse the City for negligent acts. Its obligation to supply power is derived from its contract with its customers, and a failure to provide uninterrupted service is, at worst, a breach of contract and does not impact upon any common law duty owed by the utility to its customers. Thus, the interruption of service may be because of the negligence of a supplier (*e.g.*, vendor to city negligently disrupts supply of electricity to City's grid) or because of negligence of the city itself (*e.g.*, city electrical worker negligently causes outage); in all such instances, the contract between the city and its customers provides that the city will not be liable for the interruption of service.

The reason that the city may contractually insulate itself from such liability is clear. In today's society which is universally dependent upon electricity and where the nation's electrical system is highly interconnected and interdependent, an interruption of electrical service can be catastrophic. For example, an interruption of electrical service for little more than a few hours could result in litigation and damages running the gamut from the spoiled frozen food in the freezers of tens of thousand private homes, to medical injuries occurring in hospitals because of lost power, to endless claims of lost computer data, business interruption, and lost profits by countless businesses.

The City acting through its rate-making authority has shifted the burden of such loss to the consumers. This type of burden shifting has been widely recognized in other jurisdictions as a valid means of electric utilities to protect themselves from potentially unlimited and ruinous liability. See, *e.g., Singer Co. v. Baltimore Gas & Elec. Co.*, 558 A.2d 419 (Md. App. 1989); *Lovico v. Consolidated Edison*, 420 N.Y.S. 2d 825 (Sup. Ct. App. Term 1979); *Landrumm v. Florida Power & Light Co.*, 505 So. 2d 552 (Div. Ct. App. Fla. 1987). In other jurisdictions, these limitations on liability have been held a proper means of shifting risk so long as they do not try to exempt the electrical supplier from liability of its own willful acts or acts of gross negligence.

The Consolidated Edison tariff involved in *Lovico v. Consolidated Edison Co., supra,* gave the utility a limited exemption from liability for damages caused by its ordinary negligence resulting in the interruption of the regular supply of service. *Id.* at p. 825. In upholding this limited exemption, the Supreme Court, Appellate Term stated:

This limited exemption was validly approved by the Public Service Commission and is lawful. [Citations omitted.] We note that as to damages resulting from the supply or use of electricity, as opposed to

damages caused by interruption of the supply of service, the utility is not absolved for its ordinary negligence …. While Consolidated Edison would be liable for its gross negligence causing an interruption of service, the record before this Court does not establish any conduct constituting gross negligence.

*Id.* at p. 826.

In the instant case, there is no allegation of gross negligence. In fact, because the Court has struck the negligence count from the Motion for Judgment, there is no negligence claim encompassed by the current suit. This Court offers no opinion on the validity of Clause 18 of the Rules and Regulations insofar as they may be read to attempt to insulate the City from willful acts of "willful neglect" in the operations of its electrical system.

There being no material issues of fact under the remaining Count, the Court hereby enters summary judgment on Count II (Contract) in favor of the Defendant.

The Clerk is directed to send attested copies of this Opinion and Order to James W. Barkley, Esq., counsel for the City of Harrisonburg, and to Kevin M. Rose, Esq., counsel for Wampler Foods, Inc.