J-A12013-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| PECO ENERGY COMPANY, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| FIRST MONTGOMERY PROPERTIES, LTD., THE FAIRWAYS APARTMENTS ASSOCIATES, L.P., FAIRWAYS APARTMENTS G.P., INC., FMP/LAKESIDE ASSOCIATES, L.P., AND FMP/LAKESIDE PROPERTIES, INC., | |
| Appellants | No. 2100 EDA 2015 |

Appeal from the Judgment Entered August 20, 2015
In the Court of Common Pleas of Chester County
Civil Division at No(s): 2010-04274-CA

BEFORE:  BENDER, P.J.E., PANELLA, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY BENDER, P.J.E.:                    **FILED AUGUST 30, 2016**

First Montgomery Properties, Ltd. (FMP), The Fairways Apartments Associates, L.P., Fairways Apartments G.P., Inc., FMP/Lakeside Associates, L.P., and FMP/Lakeside Properties, Inc. (collectively Appellants) appeal from the judgment entered in favor of PECO Energy Company (PECO) in the amounts of $109,612.61 and $27,118.76 against Appellants, jointly and severally, plus interest.  We affirm.

PECO filed this collection action against Appellants, who are the owners of residential rental properties, to recover payment for utility

---

[*] Former Justice specially assigned to the Superior Court.

services it supplied to Appellants' tenants.[1]  Following a bench trial that resulted in a verdict in favor of PECO, Appellants filed post-trial motions, which were granted to the extent that the verdict was adjusted to include joint and several liability.  *See* Trial Court Order, 6/9/15.  Appellant's other post-trial motions were denied.

Appellants appealed to this Court and submitted a concise statement of errors complained of on appeal in response to the court's order.  *See* Pa.R.A.P. 1925(b).  The trial court issued an opinion on September 2, 2015, that addressed the issues raised by Appellants.  The court's opinion relied extensively on a lengthy footnote contained in its previously issued June 9, 2015 order that addressed all of the issues raised by Appellants in this appeal.

In addressing Appellants' issues, we are "limited to determining whether the trial court's findings are supported by competent evidence, whether errors of law have been committed, or whether the trial court's determinations demonstrate a manifest abuse of discretion."  *McShea v. City of Philadelphia*, 995 A.2d 334, 338 (Pa. 2010).  Moreover,

> [w]hen this Court entertains an appeal originating from a non-jury trial, we are bound by the trial court's findings of fact, unless those findings are not based on competent evidence.  The

---

[1] In 2003, Appellants had entered into a contract with ConServe to handle billing for PECO's services.  The deficient payments to PECO arose as a result of ConServe's continuing to bill Appellants' tenants, while stopping its payments to PECO in 2008.

trial court's conclusions of law, however, are not binding on an appellate court because it is the appellate court's duty to determine if the trial court correctly applied the law to the facts.

*Id.*

We have reviewed the extensive certified record, the briefs of the parties, the applicable law, and the thorough and well-crafted opinion authored by the Honorable Edward Griffith of the Court of Common Pleas of Chester County, dated September 2, 2015. We conclude that Judge Griffith's comprehensive opinion properly disposes of the issues presented by Appellants on appeal and we discern no abuse of discretion or error of law. Accordingly, we adopt Judge Griffith's opinion as our own and affirm the judgment on that basis.

Judgment affirmed.
Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/30/2016

PECO ENERGY COMPANY
Plaintiff

v.

FIRST MONTGOMERY PROPERTIES,
LTD., individually and t/a FIRST
MONTGOMERY GROUP, THE
FAIRWAYS APARTMENTS
ASSOCIATES, L.P., individually and t/a
FAIRWAYS APARTMENTS, FAIRWAYS
APARTMENTS G.P., INC.,
FMP/LAKESIDE ASSOCIATES, L.P.
individually and t/a MELROSE STATION
APARTMENTS and FMP/LAKESIDE
PROPERTIES, INC.
Defendants

: IN THE COURT OF COMMON PLEAS

: CHESTER COUNTY, PENNSYLVANIA

: NO. 2010-04274

: CIVIL ACTION – LAW



## OPINION

Defendants, First Montgomery Properties, Ltd., The Fairways Apartments Associates, L.P., Fairways Apartments G.P., Inc., FMP/Lakeside Associates, L.P., and FMP/Lakeside Properties, Inc. (collectively, "Defendants"), have appealed from orders entered June 9, 2015[1] and March 18, 2014.

Plaintiff, PECO Energy Company, brought this action to recover sums for electrical service delivered by PECO to residential rental properties owned by Defendants. Following a bench trial, a decision was entered on February 4, 2015 in favor of Plaintiff, PECO Energy Company. Thereafter, Defendants filed a post-trial motion. The order entered June 9, 2015 granted Defendants some post-trial relief, specifically, the award was restated to take into account the joint and several liability of the various defense entities for the debt owed to PECO; however, most of the relief Defendants sought post-trial was denied. The order entered March 18, 2014 had denied Defendants' motion for summary judgment.

Because the footnote to the June 9, 2015 Order addresses the issues preserved by Defendants in their Statement of Matters Complained of on Appeal, we reproduce the footnote here[2] for the convenience of the reviewing court:

This is a collection action brought by Plaintiff, PECO Energy Company ("PECO"), to recover sums for utility services, electric

---

[1] Erroneously stated as July 9, 2016 in the Notice of Appeal.
[2] Typographical errors have been corrected.

and gas, that PECO delivered to residential rental properties owned by Defendants, First Montgomery Properties, Ltd., individually and t/a First Montgomery Group ("First Montgomery"), The Fairways Apartments Associates, L.P., individually and t/a Fairways Apartments, Fairways Apartments G.P., Inc., FMP/Lakeside Associates, L.P. individually and t/a Melrose Station Apartments and FMP/Lakeside Properties, Inc.

Defendants operate apartment complexes, including The Fairways Apartments and Townhomes ("the Fairways Apartments") and Melrose Station Apartments ("the Melrose Apartments")(collectively, "the Apartment Complexes"). This action concerns the collection of eighteen past due accounts, fourteen at the Fairways Apartments and four at the Melrose Apartments.

On June 24, 2003, First Montgomery entered into a contract with ConServe Energy ("ConServe") to manage billing for PECO supplied utility services to the Apartment Complexes.

Before June 24, 2003, tenants of the Apartment Complexes were billed by and paid PECO for utility services.

Subsequent to June 24, 2003, tenants of the Apartment Complexes were billed by and paid ConServe for utility services. To facilitate the transition to ConServe as a billing agent, PECO's metering of individual tenant's units was ended and PECO installed master meters at the Apartment Complexes. Electricity delivered by PECO to the master meters was routed through underground transformers installed by ConServe and then delivered to individual tenant's units, where ConServe had installed their own metering equipment. ConServe was responsible for paying PECO for electricity delivered to the master meters.

Defendants, as owners/operators of the Apartment Complexes, were the rate payers or customers of PECO at all times. First Montgomery directed PECO to cooperate with its agent, ConServe, in setting up a master meter/master account system at the Apartment Complexes. First Montgomery directed PECO to send bills for utility services to ConServe.

In or about February, 2008, while still collecting payments from the tenants, ConServe stopped paying PECO and Defendants' accounts with PECO fell into arrears. On April 5, 2010, PECO commenced this action for breach of contract and unjust enrichment. At trial, PECO established that when suit was commenced the fourteen accounts as the Fairways Apartments had an unpaid balance of $109,612.61 and the four accounts at the Melrose Apartments had an unpaid balance of $27,118.76. These balances were comprised of unpaid charges for utilities as well as late payment charges that posted monthly.

There had been prior litigation between PECO and the Fairways Apartments defendants, specifically, First Montgomery Properties,

2

1158(a)

Ltd., The Fairways Apartments Associates, L.P., Fairways Apartments G.P., Inc., FMP/Fairways Associates, L.P. and FMP/Fairways, Inc. ("Prior Litigation"). On February 12, 2009, a settlement agreement resolved the Prior Litigation ("the Settlement Agreement"). The Prior Litigation concerned fourteen Fairways Apartments' accounts, each separate and distinct from the eighteen accounts involved in the current litigation.

Following a bench trial on January 13, 2015 and entry of our verdict, Defendants filed post-trial motions, which we now address.

*Damages award*:

We found merit in Defendants' claim that the damages award was incorrectly stated. Our order was amended to accurately state Defendants' liability.

*Exclusion of evidence of the Settlement Agreement*:

On PECO's motion in limine, evidence of the Settlement Agreement was precluded from trial. Defendants contend that the Settlement Agreement contains a general release that bars the claims asserted in this action and should have been admitted at trial.

In the Prior Litigation, PECO had sought the appointment of a receiver to collect $163,758.71 in past due utility bills at the Fairmont Apartments. The Settlement Agreement recites:

> WHEREAS, as of January 12, 2009, PECO Energy alleges that First Montgomery owes PECO Energy the amount of $163,758.71 for utility service provided to First Montgomery under the account numbers referenced in Exhibit A (the "Debt");

(Settlement Agreement, p.1) Exhibit A, which defines "the Debt" that is the subject of the Settlement Agreement, consists solely of this chart:

| First Montgomery Group | | | | |
|---|---|---|---|---|
| Account Number | Premise Address | Balance as of 1/12/09 | Current Bill | Due Date |
| 11033-01427 | 400 MONTGOMERY BLVD. G3E THORNDALE PA 19372 | $19,284.09 | $2,103.92 | 02/02/09 |
| 38882-00600 | 0 OVERLEAF DR, G4D THORNDALE PA 19372 | $12,255.72 | $1,774.20 | 02/02/09 |
| 35788-02226 | 38 SKYVIEW LN, F4D THORNDALE PA 19372 | $16,393.69 | $1,792.76 | 02/02/09 |
| 26507-01100 | 0 GREENBRIAR LN, G2D THORNDALE PA 19372 | $15,266.48 | $1,466.58 | 02/02/09 |
| 14128-01908 | 200 MONTGOMERY BLVD. A3F THORNDALE PA 19372 | $12,443.58 | $1,122.44 | 02/02/09 |
| 45068-00807 | 0 TURTLEPOINT LN, G5E THORNDALE PA 19372 | $17,076.80 | $1,803.58 | 02/02/09 |
| 41975-00802 | 0 TURTLEPOINT LN, H4G THORNDALE PA 19372 | $16,641.53 | $1,894.24 | 02/02/09 |
| 45069-00600 | 0 BLUFF RD. H4F THORNDALE PA 19372 | $5,829.39 | $772.25 | 02/02/09 |
| 48161-00200 | 0 BLUFF RD, H4E THORNDALE PA 19372 | $8,986.65 | $1,097.79 | 02/02/09 |
| 48161r01708 | 0 FOOTHILL TRL, A5G THORNDALE PA 19372 | $7,472.20 | $945.93 | 02/02/09 |
| 51253-01408 | 0 BLUFF RD, H5E THORNDALE PA 19372. | $7,390.66 | $841.64 | 02/02/09 |
| 60531-01608 | 0 HORSESHOE DR, A4E THORNDALE PA 19372 | $7,572.77 | $995.05 | 02/02/09 |
| 63623-01601 | 0 GOLFERS WAY, "B3E THORNDALE PA 19372 | $8,757.60 | $817.25 | 02/02/09 |
| 97630-00200 | 2 THORNDALE PL, B2D THORNDALE PA 19372 | $8,387.55 | $853.25 | 02/02/09 |
| | | | | |
| | | $163,758.71 | $18,280.88 | |

3

The release provides:

1. Mutual Release.

A. Upon receipt of the final payment referenced in paragraph 3 herein, PECO Energy releases and forever discharges First Montgomery, its successors and assigns, officers, directors, agents, employees of and from any and all manner of actions and cause of action in law or equity; known or unknown (including but not limited to the filing of a complaint before the Pennsylvania Public Utility Commission or the Pennsylvania State Attorney General), and including those which were or could have been asserted or which PECO Energy ever had, now has, or ever will have against First Montgomery arising out of or in connection with the Debt.

(Settlement Agreement, p. 1)

The entire release is qualified by the final clause, "arising out of or in connection with the Debt." The "Debt" is defined as fourteen specific Fairmont Apartment accounts. The "Debt" is separate from the eighteen accounts sued on in the within action, which include four Melrose Apartment accounts. The release was specifically limited to the accounts defined by account number and account balance as the "Debt". Defendants would have us ignore this qualification and read the release as encompassing all claims that PECO could have brought at the time of the settlement, whether or not such claims involved Fairmount Apartment accounts or the same parties.

The Settlement Agreement is unambiguous and clearly identifies and narrowly defines the "Debt" released. Nothing in the Settlement Agreement suggests that the "Debt" was intended to be expanded beyond the definition set forth at Exhibit A. "When construing agreements involving clear and unambiguous terms, this Court need only examine the writing itself to give effect to the parties['] understanding. The court must construe the contract only as written and may not modify the plain meaning of the words under the guise of interpretation. When the terms of a written contract are clear, this Court will not re-write it to give it a construction in conflict with the accepted and plain meaning of the language used." Acme Markets, Inc. v. Federal Armored Exp., Inc., 437 Pa.Super. 41, 648 A.2d 1218, 1220-1221 (Pa.Super.,1994) (citations omitted). Furthermore, the "effect of a release is to be determined by the ordinary meaning of its language." Republic Ins. Co. v. Paul Davis Systems of Pittsburgh South, Inc. 543 Pa. 186, 670 A.2d 614, 615 (Pa.,1995). Having determined that the release was limited on its face to the claims raised in the Prior Litigation, we concluded that the Settlement Agreement was of no probative value to the claims pending in the within action, which derived from

4

separate accounts and balances and did not arise out of or in connection with the "Debt".

Defendants also sought to introduce evidence of the Settlement Agreement to counter trial testimony of PECO's witness that PECO had tried to "reach out to negotiate payment arrangements" but were "unable to negotiate payment." (N.T. 9:6-10) Defendants expressed concern that such statements were prejudicial. However, because this was a bench trial, we can assure Defendants that these comments were disregarded and played no part in our decision.

*Formation of a contract:*

Defendants claim that PECO failed to establish the essential terms of a contract, in this case the Tariff. However, a Tariff creates a contract and by accepting utility service delivered through master meters to its properties, Defendants agreed to abide by the Tariff's rates, rules and regulations.

> Tariffs, of course, can include schedules of rates, and all rules, regulations, practices or contracts involving rates and have the force of law and are binding on both the utility and its customer. Behrend v. Bell Telephone Company, 242 Pa.Superior Ct. 47, 363 A.2d 1152 (1976). And, in Bell Telephone Co.. v. Pennsylvania Public Utility Commission, 53 Pa.Commonwealth Ct. 241, 244, 417 A.2d 827, 828-29 (1980), this Court construed Section 1303 of the Code and stated that "(t)here can be no lawful rate except the last tariff published as provided by law.... Further, it is well established that in the absence of an exception by the Commission, a public utility may not charge any rate for services other than that lawfully tariffed...." (Citations omitted, emphasis in original.) It is well-settled in Pennsylvania that:

>> Contracts for the service of utilities are presumed to have been made subject to the police power of the state ..., and it is beyond the power of the contracting parties to fix rates or provide for service permanently.... (T)he Public Utility Law supplant(s) any agreement in so far as rates are involved between the consumer and the utility. (Citations omitted, emphasis added.)

Brockway Glass Co. v. Pennsylvania Public Utility Commission, 63 Pa.Cmwlth. 238, 437 A.2d 1067, 1070 (Pa.Cmwlth.,1981)(citations omitted). Tariffs are not mere contracts, but have the force of law and are binding on the consumer and the utility. Stiteler v. Bell Tel. Co. 32 Pa.Cmwlth. 319, 379 A.2d 339, 341 (Pa.Cmwlth. 1977). Regardless of the evidence PECO presented to support the terms of the Tariff, the Tariff applies by operation of law and Defendants,

5

1161(a)

by accepting utility service, and are bound to pay PECO in accordance with the terms of the Tariff in effect at the time the charges were incurred.

Defendants contend that PECO failed to establish liability for any defendant other than First Montgomery.

That The Fairways Apartments Associates, L.P., individually and t/a Fairways Apartments and Fairways Apartments G.P., Inc. operate the Fairways Apartments was admitted by Defendants in the pleadings. (Complaint and Amended Answer, ¶¶ 4-7, 20, 25) The Utility Services Agreement entered into by The Fairways Apartments Associates, L.P. and ConServe describes The Fairways Apartments Associates, L.P. as the "owner" who "owns and operates" the Fairways Apartments. (Exh. P-52, p.1) The Utility Services Agreement also recites that it is the "owner" who purchases electric energy from the utility. (Exh. P-52, Exh. D, p. 1)

That FMP/Lakeside Associates, L.P. individually and t/a Melrose Station Apartments and FMP/Lakeside Properties, Inc. operate the Melrose Apartments was admitted by Defendants in the pleadings. (Complaint and Answer, ¶¶ 8-11, 27, 32)

Lisa Holland, a PECO business analyst working in collections, testified that all of the Defendants were customers/account holders. (N.T. 8:2-15, 13:8-11) On cross-examination, Ms. Holland was never questioned about her identification of the Defendants as the parties responsible for the eighteen accounts at issue. Based upon Defendants' admissions in pleadings and the evidence as stated, we concluded that all of the Defendants had liability for specific accounts as stated in our decision.

_ConServe as agent_:

Throughout this litigation, Defendants have attempted to distance themselves from ConServe. However, it was Defendants who brought ConServe into its relationship with PECO and directed PECO to communicate and cooperate with ConServe as "our agent in our metering and billing service program" at the Apartment Complexes. (Exh. P-10)

On September 28, 2004, ConServe sent a letter to PECO identifying itself as the "accounts management agent for First Montgomery Group" and requesting the creation of a master account for summary billing for the Fairways Apartments. (Exhs. P-8, D-E) On the same day, ConServe sent a second letter to PECO identifying itself as the "accounts management agent for First Montgomery Group" and requesting the creation of a master account for summary billing for the Melrose Apartments. (Exhs. P-9, D-F) In both instances, ConServe directed PECO to send its bills to ConServe at a Minnesota address.

On October 15, 2004, First Montgomery sent a letter to PECO stating:

6

... we have retained ConServe Corporation to be our agent in our metering and billing services program [at the Apartment Complexes.] ... Please be advised that ConServe has full authorization to work with you regarding billing issues on the above properties. In addition, we expect that you will honor ConServe's request as outlined in the attached letters from ConServe [Exhs. P-8/D-E and P-9/D-F]. Any communication regarding this program and the implementation process should be directed to ConServe as our agent in this with us copied ...

(Exhs. P-10, D-G)(N.T. 89:12-18)

PECO complied with First Montgomery's request and began to send bills for utility services at the Apartment Complexes to the Minnesota address. As early as August, 2007, Defendants knew payments for utility accounts at the Apartment Complexes were in arrears; however, Defendants chose to believe ConServe's explanations, which placed blame on PECO. (N.T. 91:5-11, 116:17-117:2, 118:23-119:2; Exhs. P-11, D-H) Defendants continued to work with ConServe, even though ConServe was never able to produce a reconciliation of the accounts. (N.T. 86:2-4, 117:5-8, 91:23-92:5, 118:1-2) On May 14, 2008, First Montgomery sent a letter to ConServe terminating their contract. (N.T. 93:3-6, 118:16-20, Exh. D-I) At about the same time, First Montgomery directed PECO to send bills for utility services at the Apartment Complexes to its New Jersey offices. PECO again complied with First Montgomery's instructions.

Based upon First Montgomery's conduct and representations to PECO, we concluded that ConServe was First Montgomery's agent.

Defendants also argue that they are not liable for the debt ConServe's criminal activity created because ConServe acted outside the scope of its agency when it stole funds collected from tenants at the Apartment Complexes. However, PECO's contractual or Tariff relationship was with Defendants, not ConServe, and Defendants remain liable for the debt. "[A] principal is liable to innocent third parties for the frauds, deceits, concealments, misrepresentations, torts, negligences and other malfeasances or misfeasances of his agent committed in the course of his employment, although the principal did not authorize, justify or participate in, or indeed know of, such misconduct, or even if he forbade the acts or disapproved of them." Aiello v. Ed Saxe Real Estate, Inc., 508 Pa. 553, 499 A.2d 282, 287 (Pa.,1985). Defendants authorized PECO to interact with ConServe as their agent and PECO complied with PECO's instructions. The relationship between Defendants and ConServe does not in any way limit or reduce Defendants liability to PECO.

7

1163(a)

*Admission of PECO's billing summaries:*

Defendants filed a motion in limine to exclude PECO's billing summaries as evidence at trial on the basis that the billing summaries are not the best evidence of the debt. This motion was denied and at trial PECO introduced its business records of the eighteen contested accounts, which consisted of Activity Statements, designated as billing summaries by the parties, as well as Bills from 2008 through 2010. Bills predating 2008 were unavailable, having been destroyed by PECO in the usual course of business pursuant to its retention policy.

Pa.R.E., Rule 1004 allows a party to use its business records when original invoices are unavailable and provides:

> An original is not required and other evidence of the content of a writing, recording, or photograph is admissible if:
>
> (a) all the originals are lost or destroyed, and not by the proponent acting in bad faith;

Pa.R.E., Rule 1004.

Bills for each account, dating from October, 2008 for all but three accounts through October, 2010, were admitted at trial. Bills for the remaining three accounts, dating from December, 2008 through October, 2010, were admitted. (Exhs. P-33 - P-50) In addition, Activity Statements for each account were admitted. (Exhs. P-15 - P-32) Each Activity Statement set forth invoice dates, addressee, billing address, current charges, late fees, prior balances and payment credits. (N.T. 11:21-12:3) The records that PECO produced contained the same information as the Bills that had been sent monthly to First Montgomery, either directly or through its agent, ConServe. The Activity Statements are created by PECO routinely and concurrently with their Bills. The Bills are created for the customer and the Activity Statements are created for internal purposes. (N.T. 11:15-20, 23:4-16) The records that PECO produced are maintained in the regular course of business to record regular, business related activities. (N.T. 12:4-11, 21:5-12) The records PECO produced constitute business records and Defendants were not prejudiced in anyway by the absence of the original billing records.

*Unjust enrichment:*

Defendants maintain that PECO did not establish a claim for unjust enrichment. Unjust enrichment requires proof of three elements:

> (i) [B]enefits conferred on defendant by plaintiff[;] (ii) appreciation of such benefits by defendant[;] and (iii) acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value.

8

1164(a)

Shafer Elec. & Constr. v. Mantia, 67 A.3d 8,12 n. 5 (Pa.Super.,2013)(citation omitted). PECO delivered utilities to Defendants' residential rental properties. Defendants are required to provide their tenants with habitable units, which include electrical power and heat. (N.T. 95:9-16) Defendants were able to maintain tenants in their properties and collect rent by accepting the benefit of the utilities delivered by PECO. Defendants, or their agent, collected payments from tenants for the utilities, but failed to pay PECO's bill. PECO established its claim for unjust enrichment.

Defendants complain that that under unjust enrichment they can only be liable for electric charges and not late payment charges. However, the Tariff controls the charges for utilities and as such the late payment charges are mandated and become part of the debt. PECO does not have discretion to charge a customer other than as provided by the Tariff.

For all of the reasons stated, we entered our Order.

BY THE COURT:

Dated: September / , 2015

_____
Edward Griffith, J.

9

1165(a)